# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

SEGMENT CONSULTING
MANAGEMENT, LTD., a British
Columbia, Canada Company; and
LIGHTHOUSE ENTERPRISES, INC.,
a Barbados Company,

      Plaintiffs,

v.

BLISS NUTRACETICALS, LLC, a
Georgia Limited Liability Company;
VIVAZEN BOTANICALS, LLC, a
Florida Limited Liability Company;
and DOES 1 through 10,

      Defendants.

CIVIL ACTION

FILE NO: _____

**JURY DEMAND**

---

## VERIFIED COMPLAINT

---

COME NOW Plaintiffs Segment Consulting Management, Ltd. ("Segment")

and Lighthouse Enterprises, Inc. ("Lighthouse") (at times collectively, "Plaintiffs"),

to aver and complain of Defendants Bliss Nutraceticals, LLC, a Georgia limited

liability company ("Bliss Nutra"), Vivazen Botanicals LLC, an inactive Florida

limited liability company ("VZB") (Bliss Nutra and VZB are at times collectively referred to as "Defendants"), and Does 1 through 10, as follows:

## **PARTIES**

1.      Segment is a corporation duly incorporated under the laws of, and with its principal place of business in, British Columbia, Canada, with its principal office at 328-1231 Pacific Blvd, Vancouver, BC V6Z0E2.

2.      Lighthouse is a corporation duly incorporated under the laws of, and with its principal place of business in, Barbados, with its principal office at Radley Court, Upper Collymore Rock, St. Michael, BB, BRB 14004.

3.      Bliss Nutra is a limited liability company organized under the laws of the State of Georgia, with its principal place of business at 7074 Peachtree Industrial Blvd, Peachtree Corners, GA 30071.

4.      VZB is an inactive limited liability company organized under the laws of the State of Florida, and was administratively dissolved on September 28, 2018, with its principal place of business at 1991 SW 164 Ave, Miramar, FL 33027.

5.      Does 1 through 10 are unknown principals, officers, bottlers, suppliers, vendors, and/or other agents of Defendants who participated in Defendants' tortious conduct alleged herein and are therefore jointly and severally liable with Defendants

for the same. Plaintiffs will amend this pleading to add such persons to this suit as discovery proceeds.

## JURISDICTION AND VENUE

6.     Because this dispute arises from Defendants' trademark infringement and unfair competition under the federal Lanham Act, this Court has subject matter jurisdiction pursuant to Title 28, Sections 1331 and 1338 of the United States Code.

7.     Because this dispute is between "citizens of a State and citizens or subjects of a foreign state," and because more than $75,000 is in controversy, this Court also has subject matter jurisdiction under Title 28, Section 1332(a)(2) of the United States Code.

8.     Because Bliss Nutra is organized under the laws of the State of Georgia, this Court has personal jurisdiction over Bliss Nutra under the Due Process Clause, Rule 4 of the Federal Rules of Civil Procedure, and the laws of the State of Georgia.

9.     Because, on information and belief, VZB engaged at some point in time in the marketing and distribution of infringing products in the State of Georgia, this Court has personal jurisdiction over VZB under the Due Process Clause, Rule 4 of the Federal Rules of Civil Procedure, and the laws of the State of Georgia.

10.     Venue is proper in this Court pursuant to Title 28, Section 1391(b)(1) of the United States Code.

## GENERAL ALLEGATIONS

11.     Plaintiffs together hold all equitable and legal interest in the trademark "VIVAZEN," which after application in late 2015 was, on February 14, 2017, duly registered with the United States Patent and Trademark Office (the "USPTO") for International Class 005, specifically, "[n]utritional beverages, namely, nutritionally fortified beverages featuring botanicals and herbal extracts for helping to relieve exercise induced minor muscle pain and soreness; herbal dietary supplements," and was assigned registration number 5140001 (the "Mark").

12.     When Lighthouse registered the Mark, no other persons in the United States were using the Mark or anything similar thereto.

13.     Pursuant to Title 15, Section 1072 of the United States Code, Plaintiffs' registration of the Mark constitutes constructive notice of Plaintiffs' rights in and to the Mark.

14.     Since 2012, Plaintiffs and their predecessors-in-interest have marketed and sold under the Mark various beverages and powders featuring kratom, including a kratom-based shot (the "Product"), and have expended tens of millions of dollars to develop the Mark's goodwill.

15.     Today, the Product is manufactured and sold by Segment.

16.     True and correct depictions of the Product are collectively attached to this pleading as **Exhibit 1**.

17.     As a result of, among other things, substantial investment in the Mark, and in goods marketed and sold under the Mark, by Plaintiffs and their predecessors-in-interest, the consuming public recognizes the Mark and associates the Mark with a single source: Segment.

18.     Indeed, Plaintiffs and their predecessors-in-interest have collectively sold more than 30 million bottles of both CBD- and kratom-based beverage shots in the United States under the Mark.

19.     More particularly, between its start in 2012 and mid-2017, Plaintiffs and their predecessors-in-interest had collectively sold more than 25 million bottles of kratom-based beverage shots in the United States under the Mark.

**Defendants' Infringement of Plaintiffs' Mark**

20.     On September 22, 2017, VZB was organized under the laws of the State of Florida by Rachana Arora, Shabana Patel, and Shruti Shah.

21.     A true and correct copy of VZB's articles of organization is attached to this pleading as **Exhibit 2**.

22.     On November 14, 2017, Bliss Nutra was organized under the laws of the State of Georgia by Rachana Arora, Shabana Patel, and Shruti Shah.

23.     True and correct copies of Bliss Nutra's certificate of organization and articles of organization are collectively attached to this pleading as **Exhibit 3**.

24.     Upon information and belief, Defendants were organized for the sole purpose of selling products that infringed upon Plaintiffs' Mark.

25.     One or more Defendants operates the website located at blissnutra.com (their "Website").

26.     Upon information and belief, one or more Defendants also operate the website vivazenbotanicals.com (the "VZB Website").

27.     A true and correct screenshot of the VZB Website, taken on April 17, 2020, is attached to this pleading as **Exhibit 4**.

28.     A true and correct copy of the VZB Website's source code, as of April 20, 2020, is attached hereto as **Exhibit 5**.

29.     Defendants have an entire section of their Website devoted exclusively to "Vivazen," as reflected in the following screenshot, taken April 17, 2020:



30.     The uniform resource locator (URL) for the "Vivazen" section of Bliss Nutra's Website is https://blissnutra.com/collections/vivazen.

31.     As shown in Exhibits 4 and 5, the VZB Website provides links to Bliss Nutra's Website, at which visitors can purchase the Infringing Products.

32.     More specifically, the VZB Website links visitors directly to the special "Vivazen" section of Bliss Nutra's Website, as reflected in the following screenshot of the VZB Website's source code, with the words "Interested in buying or selling our products?" and "visit store":



33.     However, instead of selling the Product, or any product that originated with Segment, Defendants are using their Website and the VZB Website to market and sell kratom-based products under the name "Vivazen Botanicals" (collectively, the "Infringing Products").

34.     Defendants sell their kratom-based shot wholesale at a price of $28.00 per display box containing 840 bottles, or $23,520 per pallet.

35.     Upon information and belief, Defendants have diverted over $700,000 per month in gross revenues from Plaintiffs, through Defendants' sale of ***just*** their kratom-based shot, not counting the remaining Infringing Products.

36.     Defendants market the Infringing Products at trade shows and through the same distribution channels as Segment markets the Product.

37.     Defendants also market the Infringing Products on their Website, where they describe their kratom-based shot (which competes with Segment's Product) as a "Vivazen 2 oz Kratom Shot," as shown in this screenshot from April 20, 2020:



38.     Plaintiffs never granted Defendants any license, or otherwise permitted Defendants or any of them, to use the Mark.

**Defendants' Infringement Confuses Consumers and Distributors**

39.     In fall of 2019, Plaintiffs discovered that someone was marketing and selling the Infringing Products.

40.     Plaintiffs purchased one of the Infringing Products and learned from its label that it was "manufactured exclusively for" VZB and referred consumers to the VZB Website, as reflected in **Exhibit 6** to this pleading, which is a true and correct depiction of that Infringing Product.

41.     Plaintiffs discovered the Infringing Products for sale on the websites of various distributors in Segment's industry, including Gold Dust Kratom Extracts, Jack B Goods, Agrodine, and CBD Warehouse.

42.     True and correct screenshots, taken April 20, 2020, show the Infringing Products advertised for sale on the websites of those distributors, and are attached to this pleading as **Exhibit 7**, **Exhibit 8**, **Exhibit 9**, and **Exhibit 10**, respectively.

43.     While one distributor clarifies that the Infringing Products are in no way affiliated with Plaintiffs, the three other distributors describe the Infringing Products using Plaintiffs' Mark, saying things like:

10

a. "**Vivazen** the **King of Kratom** is back and stronger than ever!" (Ex. 7, at 2) (emphasis in original);

b. "You can find **Vivazen** bulk powder with lots of white crystals HERE" (Ex. 9, at 1) (emphasis added); and

c. "Stronger than ever **VIVAZEN** for sale" (Ex. 10, at 2) (emphasis added; all caps in original).

44.   Indeed, Segment has received myriad telephone calls and e-mails from consumers and distributors who mistakenly believe the Infringing Products originate with Plaintiffs.

45.   Examples of some e-mails (with identifying information redacted) are collectively attached hereto as **Exhibit 11**.

46.   Those e-mails mention "powder," "capsules," and "caplets," but neither of Plaintiffs has never sold kratom-based products in powder, capsules or caplets.

47.   Furthermore, CBD Warehouse's listing of Defendants' kratom-based beverage shot (which competes with Segment's Product) describes Defendants' shot as a "Vivazen Shot" or a "Vivazen Kratom Shot,"[1] as seen in the following full-page screenshot, taken April 20, 2020:

---

[1] **Exhibit 12** is a true and correct screenshot of the listing, taken on April 20, 2020.

Home / BUY KRATOM EXTRACTS / Vivazen Shot



### Vivazen Shot

$13.99

| 1 | ADD TO CART |

Category: BUY KRATOM EXTRACTS Tag: vivazen shot

**DESCRIPTION**

## Description

VIVAZEN Kratom Shot is the next step to getting your kratom dose. With the power of our fantastic kratom in a tiny bottle, your ingestion of large amounts of powder is no more. We used our very own kratom that you know and love and boiled them down to a 10ml bottle. From this, you can enjoy our bottles of viva zen powder in tiny pint sized bottles. Just like our powder, it can be enjoyed as a stimulant or a sedative. The same also goes for relieving muscle pain and soreness after rigorous exercise. With this in your life you can feel good in the morning or at night with your favorite things in life.

Vivazen Kratom Shot are exactly the same to each other except for its physical form. That being one is a solid and the other being a liquid. We also harvest them from cultivators who grow them in a controlled environment. To protect local communities we harvest our kratom locally. Generally, the recommended amount to take is only one bottle if you wish to have a sedative effect or half for stimulation. Do not take this product for more than 4 consecutive weeks, will cause adverse effects.

Ingredients: Water, Kratom extract

All products contain less than 0.3% THC.

48.     Consumers posting reviews on Gold Dust Kratom's advertisement for

the Infringing Products have described them using Plaintiffs' Mark (Ex. 13, at 3)[2]:



49.     Consumers posting reviews on Agrodine's advertisement of Infringing

Products have also described them using Plaintiffs' Mark (Ex. 14, at 2)[3]:

---

[2] **Exhibit 13** of this pleading is a true and correct screenshot of Gold Dust Kratom's website, taken April 20, 2020, showing additional pages of consumer reviews than those depicted in Exhibit 6.

[3] **Exhibit 14** of this pleading is a true and correct screenshot of Agrodine's website, taken April 20, 2020, showing additional pages of consumer reviews than those depicted in Exhibit 8. ("Maeng da" is a type of kratom.)



**Defendants Double Down in Their Infringement**

50.      On or about January 31, 2020, Plaintiffs through counsel sent VZB the

cease and desist letter attached hereto as **Exhibit 15**, care of Shruti Shah, VZB's

registered agent per the records of the State of Florida.

51.     In that letter, VZB was notified of Plaintiffs' exclusive right to the Mark and told to "immediately cease and desist all use of the Mark." Ex. 15, at 2.

52.     Plaintiffs never received a response to that letter.

53.     Upon information and belief, Defendants instead began an undertaking to register their infringing mark with the USPTO.

54.     At a tradeshow from February 25-28, 2020, representatives of Plaintiffs met representatives of Defendants, including Bliss Nutra's CEO, Philip Jones.

55.     A true and correct photograph of the business card for Mr. Jones, which Plaintiffs at that tradeshow, is attached to this pleading as **Exhibit 16**.

56.     Bliss Nutra was actively selling and promoting the Infringing Products at the tradeshow.

57.     Plaintiffs' further investigation revealed that Bliss Nutra was organized by the same individuals as VZB.

58.     That was when Plaintiffs first learned of Bliss Nutra's co-infringement with VZB in the sale of the Infringing Products.

59.     On or about March 9, 2020, Plaintiffs through counsel sent Mr. Jones the letter attached hereto as **Exhibit 17**.

60.     In that letter, Plaintiffs advised Bliss Nutra of Plaintiffs' exclusive right to the Mark, and warned Bliss Nutra that its continued use of the Mark would result in Plaintiffs taking legal action against Bliss Nutra to defend their right to the Mark.

61.     Instead of ceasing to use the Mark, Bliss Nutra filed an application the **very same day** for the trademark "Vivazen Botanicals" for International Class 005, specifically "[n]utritional supplements in the form of liquids, capsules, and powders; [d]ietary supplements," with the USPTO.

62.     True and correct copies of that application, along with other documents Bliss Nutra has filed with the USPTO, are attached to this pleading as **Exhibit 18**.

63.     As part of that application, Bliss Nutra certified under Title 15, Section 1051(a) of the United States Code that it "believes that [Bliss Nutra] is the owner of the trademark/service mark sought to be registered," despite the March 9, 2020 letter and previous letter sent to VZB.

64.     On March 16, 2020, Mr. Jones e-mailed counsel for Plaintiffs seeking the letter Plaintiffs had previously sent to VZB, and was furnished with the same.

65.     A true and correct copy of the correspondence generally described in paragraph 64 above is attached to this pleading as **Exhibit 19**.

66.     On March 19, 2020, a Philadelphia attorney named Kevin Bovard sent Plaintiffs' counsel an e-mail in which he claimed to represent Bliss Nutra, referred

16

to the March 9, 2020 letter, and said, "Know we are looking into this issue and will be in touch soon."

67.    A true and correct copy of the correspondence generally described in paragraph 66 above is attached to this pleading as **Exhibit 20**.

68.    Neither Plaintiffs nor their counsel have received any communications from Defendants or their representatives since.

## FIRST CAUSE OF ACTION:
### Federal Trademark Infringement Under 15 U.S.C. § 1114

69.    The above allegations are incorporated hereunder as though they were fully alleged herein.

70.    By using the Mark starting in 2012 when no one else was using it, and by subsequently registering the Mark with the USPTO in 2015, Plaintiffs and their predecessors acquired the exclusive right to use the Mark in the United States for all CBD- and kratom-based products, including the Product.

71.    By using the name "Vivazen Botanicals" to describe their Infringing Products, Defendants have adopted a name that is confusingly similar to Plaintiffs' Mark, such that consumers are likely to confuse the origin of the goods bearing the "Vivazen Botanicals" mark, assuming such goods are from Segment.

72.    Upon information and belief, Defendants specifically sought to use the name "Vivazen Botancials" with the intention of exploiting the goodwill Plaintiffs

and their predecessors-in-interest had accrued in the Mark with respect to CBD- and kratom-based products.

73.     Defendants' strategy appears to have worked, with several distributors and numerous consumers in Plaintiffs' industry confusingly describing Defendants' Infringing Products using Plaintiffs' Mark.

74.     Plaintiffs have not granted any of Defendants a license, or otherwise permitted them, to use the Mark.

75.     Defendants have therefore violated Title 15, Section 1114 of the United States Code.

76.     Defendants' activities and the use of Plaintiffs' Mark were undertaken with the full knowledge of Plaintiffs' rights, not only by the constructive notice of Plaintiffs' registration of the Mark, but through the myriad letters Plaintiffs have sent to Defendants.

77.     Defendants will, if not enjoined by this Court, continue to infringe upon Plaintiffs' exclusive right to the Mark, which has caused and will continue to cause irreparable harm to the goodwill of the Mark, as evidenced by their spurning of the letters Plaintiffs sent and apparent delay tactics while prosecuting an application for the infringing "Vivazen Botanicals" mark with the USPTO.

78.     Plaintiffs have no adequate legal remedy for the damage Defendants have inflicted to Plaintiffs' reputation or goodwill through Defendants' infringement upon Plaintiffs' Mark in connection with CBD- and kratom-based products.

79.     As shown by Defendants' continued disregard for the rights described in Plaintiffs' myriad letters, unless Defendants are permanently enjoined pursuant to Title 15, Section 1116 of the United States Code, from infringing upon Plaintiffs' rights to the Mark, Plaintiffs will continue to be irreparably harmed.

80.     Defendants' violation of Title 15, Section 1114 of the United States Code has caused, and is continuing to cause Plaintiffs extensive financial damage in an amount to be established at trial.

81.     Defendants' infringement upon Plaintiffs' rights to the Mark was both willful and deliberate, demonstrating a reckless disregard for those rights, at the very least by spurning Plaintiffs' myriad letters and thereafter attempting to register the "Vivazen Botanicals" mark with the USPTO while engaging in delay tactics.

82.     Pursuant to Title 15, Section 1117 of the United States Code, Plaintiffs are entitled to judgment for damages not to exceed three times the amount of actual damages and a disgorgement of all Defendants' profits from their infringement, with interest thereon, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION:
### Unfair Competition/False Designation of Origin

83.     The above allegations are incorporated hereunder as though they were fully alleged herein.

84.      Defendants have marketed and sold the Infringing Products to the same distributors to which Plaintiffs sell their products.

85.     The Mark has become uniquely associated with Segment's Product and hence identifies Segment as the source of products bearing the Mark.

86.     Defendants' interstate use of the Mark in connection with its marketing and sale of CBD- and kratom-based products has confused and continues to confuse market participants as to the source of the Infringing Products.

87.     Indeed, several distributors referred to the Infringing Products as being a "return" of Plaintiffs' products, saying the product "is back."

88.     By using the Mark in connection with the sale of Defendants' Infringing Products, Defendants have confused both consumers and distributors as to the origin, sponsorship, or approval of their Infringing Products by Plaintiffs.

89.     Plaintiffs do not, however, produce, sponsor, or approve of any of the Infringing Products.

90.     By using the Mark in connection with the sale of Defendants' Infringing Products, Defendants have confused consumers and distributors in the industry as to an affiliation, connection, or association of Defendants with Plaintiffs.

91.     Plaintiffs are not, however, affiliated, connected, or associated with any of Defendants or the Infringing Products.

92.     Defendants are therefore liable to Plaintiffs for unfair competition and false designation of origin, including without limitation under Title 15, Section 1125 of the United States Code, and have damaged Plaintiffs and their Mark in an amount to be proven at trial.

93.     Pursuant to Title 15, Section 1117 of the United States Code, Plaintiffs are entitled to judgment for damages not to exceed three times the amount of actual damages and a disgorgement of all Defendants' profits from their infringement, with interest thereon, in an amount to be determined at trial.

### THIRD CAUSE OF ACTION:
**Federal Cybersquatting**

94.     The above allegations are incorporated hereunder as though they were fully alleged herein.

95.     Upon information and belief, one or more Defendants registered, uses, or otherwise traffics in the domain name vivazenbotanicals.com.

96.     Upon information and belief, Defendants registered, used, or otherwise trafficked in the domain name vivazenbotanicals.com with a bad faith intent to profit from Plaintiffs' Mark.

97.     Defendants are therefore liable to Plaintiffs for cybersquatting pursuant to Title 15, Section 1125(d) of the United States Code, and have damaged Plaintiffs and their Mark in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION:
### Common Law Trademark Infringement/Unfair Competition

98.     The above allegations are incorporated hereunder as though they were fully alleged herein.

99.     By using the Mark beginning in 2012, expending tens of millions of dollars in marketing various kratom-based products under the Mark, establishing a good reputation as to the origin of those products, and creating goodwill in the Mark, Plaintiffs and their predecessors have acquired the exclusive right to use the Mark in the United States regarding kratom-based products.

100.   By using the name "Vivazen Botanicals" to sell the Infringing Products, Defendants have adopted a name that is confusingly similar to Plaintiffs' Mark, such that consumers are likely to confuse the origin of the Infringing Products, assuming such goods are from Segment.

101.   Upon information and belief, Defendants specifically sought to use the name "Vivazen Botancials" with the intention of exploiting the goodwill Plaintiffs and their predecessors-in-interest had accrued in the Mark.

102.   Defendants' strategy appears to have worked, with several distributors and numerous consumers in Plaintiffs' industry confusingly describing Defendants' Infringing Products using Plaintiffs' Mark.

103.   Plaintiffs have not granted any of Defendants a license, or otherwise permitted them, to use the Mark.

104.   Defendants' activities and the use of Plaintiffs' Mark were undertaken with the full knowledge of Plaintiffs' rights, not only by the constructive notice of Plaintiffs' registration of the Mark with the USPTO, but through the myriad letters Plaintiffs have sent to Defendants.

105.   Defendants will, if not enjoined by this Court, continue to infringe upon Plaintiffs' exclusive right to the Mark, which has caused and will continue to cause irreparable harm to the goodwill of the Mark.

106.   Plaintiffs have no adequate legal remedy for the damage Defendants have inflicted to Plaintiffs' reputation or goodwill through their infringement upon Plaintiffs' Mark.

107.   As shown by Defendants' continued disregard for the rights described in Plaintiffs' myriad letters, unless Defendants are permanently enjoined, pursuant to Section 10-1-452 of the Georgia Code and the common law, from infringing upon Plaintiffs' rights to the Mark, Defendants will continue to be irreparably harmed.

108.   Defendants' violation of Plaintiffs' rights has caused and is continuing to cause Plaintiffs extensive financial damage in an amount to be established at trial.

109.   Defendants' infringement upon Plaintiffs' rights to the Mark was both willful and deliberate, demonstrating a reckless disregard for those rights, at the very least by spurning Plaintiffs' myriad letters.

110.   Pursuant to Section 10-1-452 of the Georgia Code and the common law, Plaintiffs are entitled to judgment for actual and exemplary damages, a disgorgement of all Defendants' profits from their infringement, and in both cases interest thereon, in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION:
### Federal Trademark Dilution

111.   The above allegations are incorporated hereunder as though they were fully alleged herein.

112.   By using the Mark starting in 2012 when no one else was using it, and by subsequently registering the Mark with the USPTO in 2015, Plaintiffs and their

24

predecessors acquired the exclusive right to use the Mark in the United States for all CBD- and kratom-based products, including the Product.

113.   Plaintiffs' rights to the Mark are evidenced by its registration with the USPTO, and the Mark is well-known and famous among distributors and consumers in the industry for CBD- and kratom-based products.

114.   By using the Mark as described above, after the Mark became famous, Defendants have diluted the distinctive quality, fame, and value associated with the Mark, causing irreparable harm to Plaintiffs' interest in and to the Mark.

115.   Indeed, many distributors and consumers in the industry now (falsely) associate Defendants' Infringing Products with the Mark.

116.   Defendants' dilution of the Mark as described above was both willful and deliberate, demonstrating a reckless disregard for Plaintiffs' rights, at the very least by spurning Plaintiffs' myriad letters.

117.   Pursuant to Title 15, Section 1117 of the United States Code, Plaintiffs are entitled to judgment for damages and a disgorgement of all Defendants' profits from their dilution, with interest thereon, in an amount to be determined at trial.

118.   Furthermore, Defendants' conduct has demonstrated an unwillingness to respect Plaintiffs' rights, and unless enjoined, Defendants will continue to dilute the goodwill Plaintiffs have accrued (at great expense) in the Mark.

## SIXTH CAUSE OF ACTION:
### Accounting

119.   The above allegations are incorporated hereunder as though they were fully alleged herein.

120.   By engaging in the acts and infringement alleged herein, Defendants acted in conflict with Plaintiffs' rights in and to the Mark.

121.   Pursuant to Defendants' acts and infringement, Plaintiffs are entitled to an accounting from Defendants for all profits realized by such acts and infringement, including without limitation for all Infringing Products sold and the channel through which each such sale was made.

122.   Pursuant to Defendants' acts and infringement, Plaintiffs are entitled to review all of Defendants' business records to determine and confirm the extent to which Defendants wrongfully profited and otherwise benefitted from Defendants' acts and infringement alleged herein.

## SEVENTH CAUSE OF ACTION:
### Deceptive Trade Practices Under Georgia Law

123.   The above allegations are incorporated hereunder as though they were fully alleged herein.

124.    By engaging in the conduct described above, Defendants have, in the course of their business, vocation, or occupation:

26

a.    passed off the Infringing Products as those of Plaintiffs;

b.    caused a likelihood of confusion or misunderstanding among the distributors and consumers in the industry as to the source, sponsorship, and approval of the Infringing Products;

c.    caused a likelihood of confusion or misunderstanding among the distributors and consumers in the industry as to the affiliation, connection, or association of the Infringing Products with Plaintiffs; and

d.    engaged in other conduct that qualifies under Georgia law as a deceptive trade practice.

125.   Indeed, both consumers and distributors have expressed their belief that the Infringing Products are from Plaintiffs or otherwise associated with Plaintiffs' Product.

126.   Defendants' acts and infringement as alleged herein have damaged and are likely to continue to damage Plaintiffs, including the goodwill Plaintiffs have (at great expense) accrued in the Mark.

127.   If not enjoined by this Court, Defendants will continue to engage in the deceptive trade practices alleged above, thus continuing to cause irreparable harm to Plaintiffs and the goodwill Plaintiffs have accrued in the Mark.

128.    Plaintiffs are entitled to an injunction of Defendants' deceptive trade practices pursuant to Section 10-1-373 of the Georgia Code, in addition to Plaintiffs' damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray the Court for judgment in their favor against Defendants:

A.    That Defendants' conduct infringes upon Plaintiffs' rights in and to the Mark;

B.    That permanently enjoins and restrains Defendants from ever using the Mark in any fashion;

C.    That assesses monetary liability against Defendants as follows:

    i.    Plaintiffs' actual damages from Defendants' actions;

    ii.    A trebling of Plaintiffs' actual damages under Title 15, Section 1117(b) of the United States Code;

    iii.    A disgorgement of all Defendants' profits under Title 15, Section 1117(a) of the United States Code, including without limitation the estimated $3,500,000 Defendants' reaped from December 2019 through April 2020;

    iv.    Punitive or other exemplary damages as permitted by law; and

v.      Such other monetary sums to which Plaintiffs may be entitled by statute or other applicable law;

D.     That requires Defendants to furnish to Plaintiffs for destruction any and all products or other articles bearing the Mark;

E.     That requires Defendants to provide a full accounting to Plaintiffs of all profits and other benefits realized from the acts and infringement alleged herein;

F.     That awards Plaintiffs their attorney fees pursuant to Title 15, Section 1117(a) of the United States Code, Section 10-1-373 of the Georgia Code, and any contract, other statute, or other applicable law; and

G.     That awards Plaintiffs their costs, as permitted by contract, statute, or other applicable law.

Respectfully submitted this 28th day of April, 2020.

**HALL BOOTH SMITH, P.C.**

*/s/ Samuel S. Sykes II*
John E. Hall, Jr.
Georgia Bar No. 319090
Samuel S. Sykes II
Georgia Bar No. 227548
*Attorneys for Plaintiffs*

191 Peachtree Street, NE, Suite 2900
Atlanta, Georgia 30303
Phone: (404) 954-5000
Fax: (404) 954-5020
jhall@hallboothsmith.com
ssykes@hallboothsmith.com

29

## **VERIFICATION**

Pursuant to and in accordance with Title 28, Section 1746 of the United States Code, I, the undersigned, having attained to the age of at least 18 years and having personal knowledge of the foregoing, do hereby verify under penalty of perjury under the laws of the United States of America that I am the Director of Revenue and Business Development for Segment, that I have personal knowledge of the facts that form the basis of the foregoing allegations, and that the foregoing allegations are true and correct.

EXECUTED ON this _27_ day of April, 2020.

Colin Partridge