IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SEGMENT CONSULTING
MANAGEMENT, LTD.
a British Columbia, Canada Company,
et al.,

      Plaintiffs,

        v.

BLISS NUTRACETICALS, LLC
a Georgia Limited Liability Company,
et al.,

      Defendants.

CIVIL ACTION FILE
NO. 1:20-CV-1837-TWT

## OPINION AND ORDER

This is an action for trademark infringement. It is before the Court on Defendants Rachana Arora, Karan Arora, and Shruti Shah's Motion to Dismiss [Doc. 97]; Defendants Shabana Patel, Faruq Patel, and Phillip Jones's Motion to Dismiss [Doc. 118]; Third-Party Defendant Steven Curtis Holfeld's Motion to Dismiss [Doc. 152]; and Third-Party Defendant Simply Marketing, Inc.'s Motion to Dismiss [Doc. 178]. For the reasons set forth below, the Court GRANTS Defendants Rachana Arora, Karan Arora, and Shruti Shah's Motion to Dismiss [Doc. 97]; GRANTS in part and DENIES in part Defendants Shabana Patel, Faruq Patel, and Phillip Jones's Motion to Dismiss [Doc. 118]; and GRANTS Third-Party Defendant Simply Marketing, Inc.'s Motion to Dismiss [Doc. 178]. The Court reserves ruling on Third-Party Defendant

Curtis's Motion to Dismiss [Doc. 152] to allow for jurisdictional discovery and, as appropriate, additional briefing.

## I.   Background

This case arises out of the manufacture and sale of kratom-based powder, capsule, and beverage products that allegedly infringe on the trademark "VIVAZEN," whose interests are held by Plaintiffs Segment Consulting Management, Ltd. ("Segment") and Lighthouse Enterprises Inc. ("Lighthouse"). (Am. Compl. ¶¶ 20, 24, 35, 44.) According to the Plaintiffs, Defendants Vivazen Botanicals LLC ("Vivazen Botanicals") and Bliss Nutraceticals LLC ("Bliss Nutra") were organized for the "sole purpose" of selling products that infringe on the VIVAZEN trademark, in conjunction with another Defendant Natural Vitamins Laboratory Corp. ("Natural Vitamins") (collectively, "Corporate Defendants"). (*Id.* ¶ 35.) The Plaintiffs also filed suit against a number of individuals affiliated with the Corporate Defendants. Rachana Arora, Shruti Shah, and Shabana Patel are organizers and, "upon information and belief," members and/or officers of Bliss Nutra and Vivazen Botanicals (*id.* ¶¶ 6-8); Karan Arora is an officer and director of Natural Vitamins (*id.* ¶ 9); Faruq Patel is an organizer and the president of Bliss Nutra (*id.* ¶ 10); and Phillip Jones   is the chief executive officer of Bliss Nutra. (*Id.* ¶ 11.)

The Plaintiffs bring seven claims under the federal Lanham Act and Georgia law against all of the Defendants collectively: (1) federal trademark

infringement, (2) federal unfair competition/false designation of origin, (3) federal cybersquatting, (4) state trademark infringement/unfair competition, (5) federal trademark dilution, (6) accounting, and (7) state deceptive trade practices. Natural Vitamins responds with counterclaims against the Plaintiffs and third-party claims against United Naturals, Inc., Simply Marketing, Inc., and Steven Curtis Holfeld ("Curtis"). (Counterclaim & Third-Party Compl. ¶¶ 2-6.) Those claims arise out of a promissory note executed between United Naturals and Natural Vitamins in late-2015 ("Note"), which went into default when United Naturals failed to make any payments. (*Id.* ¶¶ 13-25.) Now pending before the Court are four motions to dismiss from several of the Defendants and Third-Party Defendants under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## II.   Legal Standards

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff has the burden of establishing a prima facie case by presenting enough evidence to withstand a motion for directed verdict." *United States ex rel. Bibby v. Mortgage Invs. Corp.*, 987 F.3d 1340, 1356 (11th Cir. 2021). In evaluating a plaintiff's case, "[t]he district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). Where the defendant contests the allegations of the complaint through affidavits, "the burden shifts back to the plaintiff to produce

3

evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). "And where the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must draw all reasonable inferences in the plaintiff's favor." *Mortgage Invs.*, 987 F.3d at 1356.

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

4

### III.   Discussion

### A.  R. Arora, K. Arora, and Shah's Motion to Dismiss

R. Arora, K. Arora, and Shah move to dismiss the Plaintiffs' claims against them under Rule 12(b)(2) for lack of personal jurisdiction. All three individuals live and work in Florida and contend that they do not have the requisite minimum contacts with Georgia to support jurisdiction in this Court. (R. Arora, K. Arora, & Shah's Br. in Supp. of R. Arora, K. Arora, & Shah's Mot. to Dismiss, at 2.) In response, the Plaintiffs argue that personal jurisdiction is proper over R. Arora, K. Arora, and Shah based on their ownership and management of the Corporate Defendants. (Pls.' Br. in Opp'n to R. Arora, K. Arora, and Shah's Mot. to Dismiss, at 2-3.) According to the Plaintiffs, the "detailed factual allegations" in the Amended Complaint show that these individuals directly participated in the Corporate Defendants' alleged tortious conduct, and the Corporate Defendants' contacts with Georgia can thus be imputed to them for jurisdiction purposes. (*Id.* at 10.)

"A federal court … undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). "When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe

5

it as would the state's supreme court." *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir.1998). Relevant here, the Georgia long-arm statute provides:

> A court of this state may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:(1) Transacts any business within this state; (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act; [or] (3)Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]

O.C.G.A. § 9-10-91. The long-arm statute is not coextensive with procedural due process but rather, "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1259 (11th Cir. 2010).

The Plaintiffs completely miss the mark on this point, arguing that the Court can disregard the Georgia long-arm statute because it confers personal jurisdiction to the fullest extent permitted by due process. (Pls.' Br. in Opp'n to R. Arora, K. Arora, & Shah's Mot. to Dismiss, at 7.) The Plaintiffs rely on *Innovative Clinical & Consulting Services, LLC v. First National Bank of Ames*, 279 Ga. 672 (2005), for this proposition. However, the Eleventh Circuit has interpreted *Innovative Clinical* to mean that in fact, "a trial court must undertake two inquiries, one under the Georgia long-arm statute and another

under due process." *Diamond Crystal Brands*, 593 F.3d at 1259. Due to this fundamental misunderstanding of *Innovative Clinical*, the Plaintiffs sidestep their obligation to demonstrate that the requirements of the long-arm statute are met. Instead, they summarily state in a footnote that subsections (1), (2), and (3) confer personal jurisdiction over R. Arora, K. Arora, and Shah without identifying any facts necessary to reach that conclusion. (Pls.' Br. in Opp'n to R. Arora, K. Arora, & Shah's Mot. to Dismiss at 7 n.3.)

The Court turns then to the only jurisdictional argument advanced by the Plaintiffs: that R. Arora, K. Arora, and Shah have cognizable contacts with Georgia based on their participation in the Corporate Defendants' tortious conduct. It is axiomatic that "jurisdiction over a corporate employee or officer 'does not automatically follow from jurisdiction over the corporation.'" *Amerireach.com, LLC v. Walker*, 290 Ga. 261, 266 (2011) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984)). However, a court will account for the employee's personal conduct when judging his contacts with the forum, even if he engaged in that conduct as part of his employment duties. *Id.* at 267 (citation omitted). In other words, "employees of a corporation that is subject to personal jurisdiction of the courts of the forum may themselves be subject to jurisdiction if those employees were *primary participants* in the activities forming the basis of jurisdiction over the corporation." *Id.* (emphasis added) (quoting *Application to Enforce Admin. Subpoenas Duces Tecum of the SEC v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996)).

The Amended Complaint makes the following allegations regarding R. Arora's, K. Arora's, and Shah's personal conduct in the Corporate Defendants:

- R. Arora and Shah are organizers and, upon information and belief, members and/or officers of Bliss Nutra, a Georgia corporation, and Vivazen Botanicals, a Florida corporation. (Am. Compl. ¶¶ 6, 8, 31, 33, 105.)
- Upon information and belief, at some point between May 2, 2016, and January 4, 2017, K. Arora acquired an interest in Natural Vitamins and became the president, registered agent, and director of the company. (*Id.* ¶¶ 9, 30.)
- R. Arora and K. Arora reside at the same address and, upon information and belief, K. Arora shared information about the VIVAZEN trademark and the Plaintiffs' use of the trademark with R. Arora and potentially others, such as Shah. (*Id.* ¶ 9, 94-95.)
- Upon information and belief, R. Arora, K. Arora, and Shah "have all participated in the tortious conduct alleged above at various times and in various ways." (*Id.* ¶ 130.)

These threadbare assertions—essentially that R. Arora, K. Arora, and Shah organized and/or manage the Corporate Defendants and shared information about the VIVAZEN trademark—do not suggest that they were primary participants to infringing on that trademark.[1] Beyond their corporate titles,

---

[1] While the Plaintiffs allege that all three individuals have "participated in the tortious conduct . . . at various times and in various ways" (Am. Compl. ¶ 130), "[c]onclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard." *Phoenix Ent. Partners, LLC v. Orlando Beer Garden, Inc.*, 2016 WL 1567590, at *5 (M.D. Fla. Mar. 30, 2016) (citation omitted); *see also Zhejian Dushen Necktie Co., Ltd v. Blue Med, Inc.*, 2017 WL 4119604, at *6 (S.D. Fla. Sept. 18, 2017) ("[T]he *Twombly* plausibility standard does not prevent a plaintiff from pleading facts alleged upon information and belief where the belief is based on factual information that makes the inference of culpability plausible.") (quotation marks, citation, and alteration omitted).

the Amended Complaint never explains R. Arora's, K. Arora's, or Shah's actual responsibilities with the Corporate Defendants or roles in the Corporate Defendants' alleged wrongdoing. *See, e.g., Delta Air Lines, Inc. v. Wunder*, 2014 WL 12115908, at *3-4 (N.D. Ga. Mar. 7, 2014).

Moreover, the Plaintiffs have failed to connect R. Arora's, K. Arora's, or Shah's personal conduct, however scant, to Georgia under the state's long-arm statute. Aside from organizing Bliss Nutra in Georgia, there are no allegations or evidence to show that these individuals directly facilitated the Corporate Defendants' marketing and distribution activities (or any other business operations) in the state. *See* O.C.G.A. § 9-10-91(1); *see, e.g., Amerireach.com*, 290 Ga. at 269-70 (exercising jurisdiction under subsection (1) over individuals who had "directly facilitated" corporate business in Georgia while physically present in the state); *Wunder*, 2014 WL 12115908, at *4 (subsection (1) was not satisfied absent a showing that the individual defendants were "primary participants in [the corporate defendant's] business dealings with its Georgia customers and their direct mailings to this state"). Nor do the Plaintiffs explain how R. Arora's, K. Arora's, or Shah's involvement with the Corporate Defendants contributed to a tortious act or omission within Georgia or a tortious injury in Georgia caused by an act or omission outside the state. *See* O.C.G.A. § 9-10-91(2)-(3). Accordingly, the Plaintiffs have failed to demonstrate personal jurisdiction under the Georgia long-arm statute, and the Court will grant R. Arora, K. Arora, and Shah's Motion to Dismiss on that

9

basis.

## B.  S. Patel, F. Patel, and Jones's Motion to Dismiss

S. Patel, F. Patel, and Jones move to dismiss the Plaintiffs' claims against them under Rule 12(b)(6) for failure to state a claim for relief. They contend that the factual allegations in the Amended Complaint fail to implicate them in any wrongdoing and run afoul of federal pleading standards. (S. Patel, F. Patel, & Jones's Br. in Supp. of S. Patel, F. Patel, & Jones's Mot. to Dismiss, at 1-2, 5.) The Plaintiffs respond that S. Patel, F. Patel, and Jones have each been "intricately involved" in Bliss Nutra's operations, including the infringement of the VIVAZEN trademark. (Pls.' Br. in Opp'n to S. Patel, F. Patel, and Jones's Mot. to Dismiss, at 3.) Therefore, the Plaintiffs argue that the "voluminous allegations" against Bliss Nutra make out a plausible case for personal liability—despite the "few allegations" referring specifically to S. Patel, F. Patel, and Jones. (*Id.*)

"Natural persons, as well as corporations, may be liable for trademark infringement under the Lanham Act." *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). Under certain circumstances, "liability for trademark infringement can extend beyond those entities that actually perform the acts of infringement," to include those who induce or facilitate another's infringing conduct. *Luxottica Grp. v. Airport Mini Mall, LLC*, 169 F. Supp. 3d 1343, 1347 (N.D. Ga Mar. 4, 2016) (alteration omitted) (quoting *Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*, 967 F.2d 1516, 1522

10

(11th Cir. 1992)); *see also Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 853-55 (1982). "If an individual actively and knowingly caused the trademark infringement, he is personally responsible." *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994) (citation omitted). "Specifically, a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil." *Id.*

The Amended Complaint makes the following allegations regarding S. Patel's, F. Patel's, and Jones's involvement with Bliss Nutra and its use of the VIVAZEN trademark:

- S. Patel is an organizer and, upon information and belief, a member and/or officer of Bliss Nutra and Vivazen Botanicals. (Am. Compl. ¶¶ 7, 31, 33, 105.)
- F. Patel is an organizer and the president of Bliss Nutra and, upon information and belief, resides with S. Patel. (*Id.* ¶ 10.)
- Jones is the chief executive officer of Bliss Nutra. (*Id.* ¶ 11.)
- Upon information and belief, K. Arora shared information about the VIVAZEN trademark with R. Arora and potentially others, such as S. Patel. (*Id.* ¶ 95.)
- At a tradeshow in February 2020, the Plaintiffs' representatives met with representatives of Bliss Nutra and/or Vivazen Botanicals, including Jones. (*Id.* ¶ 102.)
- Bliss Nutra and/or Vivazen Botanicals were actively selling and promoting infringing products at the tradeshow. (*Id.* ¶ 104.)
- On or about March 9, 2020, the Plaintiffs sent Jones a cease-and-desist letter advising Bliss Nutra of the Plaintiffs' exclusive right to the VIVAZEN trademark and warning that continued use of the trademark would result in legal action. (*Id.* ¶¶ 107-08.)
- On March 16, 2020, Jones emailed the Plaintiffs' counsel seeking a letter that the Plaintiffs had previously sent to Vivazen Botanicals. (*Id.* ¶ 118.)

- Upon information and belief, S. Patel, F. Patel, and Jones "have all participated in the tortious conduct alleged above at various times and in various ways." (*Id.* ¶ 130.)

According to the Plaintiffs, these allegations show that S. Patel, F. Patel, and Jones had the "requisite corporate authority in Bliss Nutra to have participated in the trademark infringement[.]" (Pls.' Br. in Opp'n to S. Patel, F. Patel, and Jones's Mot. to Dismiss, at 8.) However, the Plaintiffs rely on the standard for holding corporate officers personally liable for *copyright* infringement. *See Broadcast Music, Inc. v. Armstrong*, 2013 WL 3874082, at *3 (W.D. Tex. July 24, 2013). By contrast, S. Patel, F. Patel, and Jones appropriately cite *trademark* infringement cases to argue that the Plaintiffs' allegations do not state a claim for personal liability. (Reply Br. in Supp. of S. Patel, F. Patel, and Jones's Mot. to Dismiss, at 5-8.)

For example, in *Steven Madden, Ltd. v. Jasmin Larian, LLC*, 2019 WL 294767 (S.D.N.Y. Jan. 22, 2019), the defendant, Cult Gaia, filed a counterclaim against Steven Madden, Ltd. ("SML") and Steven Madden ("Madden") for trade dress infringement under the Lanham Act. *Id.* at *1. In support of Madden's individual liability, Cult Gaia alleged that he (1) was the founder and Creative and Design Chief of SML; (2) was the principal architect of SML's infringement of the Cult Gaia handbag; (3) was a moving, active, and conscious force behind SML and its product designs; and (4) offered the infringing handbag for sale without Cult Gaia's permission and created more versions following its objection. *Id.* at *3-4. The court concluded that these allegations were

"insufficient to state a Lanham Act claim against Madden personally." *Id.* at *4. First, Madden's title, on its own, did not suggest any personal involvement in the design and sale of the handbag. *Id.* Second, the allegations that Madden was the "principal architect" and a "moving, active, and conscious force" behind SML's designs, were "mere legal conclusions" that were "not entitled to a presumption of truth." *Id.* at *5. As for Cult Gaia's final allegation—that Madden offered the handbag for sale without permission and created more versions despite an infringement notice—the court found that "[t]hese assertions contain no factual allegations as to Madden's specific role in the purported infringement of the [handbag], but merely state conclusory allegations that conflate [SML's] actions with Madden's own." *Id.*

As in *Steven Madden*, the Plaintiffs' allegations against S. Patel and F. Patel boil down to their titles at Bliss Nutra and the bare legal conclusion that they "participated in the tortious conduct . . . at various times and in various ways." (Am. Compl. ¶¶ 7, 10, 31, 33, 105, 130.) While the Plaintiffs speculate that K. Arora discussed the VIVAZEN trademark with S. Patel, there is nothing to connect S. Patel's knowledge of the trademark, even if true, to her participation in any infringing conduct. (*Id.* ¶ 95.) The Amended Complaint thus fails to state a trademark infringement claim under the Lanham Act against S. Patel and F. Patel. The allegations against Jones present a different question: the Plaintiffs state that he represented Bliss Nutra at a trade show in February 2020 where the company "was actively selling and promoting"

13

infringing products. (*Id.* ¶¶ 102-04.) In the Court's view, this assertion is sufficient to show that at a minimum, Jones "ratifie[d]" or "participate[d] in" the purported infringement of the VIVAZEN trademark. *Babbit Elecs.*, 38 F.3d at 1184. Accordingly, the Plaintiffs can move forward with their federal trademark infringement claim against Jones.

Next, S. Patel, F. Patel, and Jones seek to dismiss the remaining claims against them as an improper "shotgun pleading."[2]  (S. Patel, F. Patel, & Jones's Br. in Supp. of S. Patel, F. Patel, & Jones's Mot. to Dismiss, at 10.) "The failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a shotgun pleading." *Beckwith v. Bellsouth Telecomms. Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005) (quotation marks and

---

[2] S. Patel, F. Patel, and Jones contend that the entire Amended Complaint, including presumably Count One for federal trademark infringement, is a shotgun pleading. However, the Motion to Dismiss undermines their position by making specific, well-reasoned arguments as to why Count One fails to state a claim for personal liability against them. (S. Patel, F. Patel, & Jones's Br. in Supp. of S. Patel, F. Patel, & Jones's Mot. to Dismiss, at 18-20; Reply Br. in Supp. of S. Patel, F. Patel, & Jones's Mot. to Dismiss, 2-9.) In other words, the Amended Complaint, at least with respect to the federal trademark infringement claim, was not "so vague or ambiguous" that they could not "reasonably prepare a response." Fed. R. Civ. P. 8(e); *see also Amin v. Mercedes-Benz USA, LLC*, 349 F. Supp. 3d 1338, 1351 (N.D. Ga. 2018) ("Rather, if the Complaint was so incomprehensible such that Daimler had no fair notice of the specific claims being interposed and the grounds upon which those claims rest, the Court finds it improbable that Daimler would be able to formulate coherent arguments as to why each of Plaintiffs' individual causes of action fail to state a claim upon which relief can be granted."). For that reason, the Court chose to address Count One, but no other claim, separately under the Rule 12(b)(6) standard and then consider whether the remaining claims constitute a shotgun pleading.

citation omitted). "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings. They waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (quotation marks, citations, and alterations omitted). As such, "[w]hen presented with a shotgun complaint, the district court should order repleading *sua sponte*." *Ferrell v. Durbin*, 311 F. App'x 253, 259 n.8 (11th Cir. 2009); *see also Beckwith*, 146 F. App'x at 371 ("[B]ecause 'shotgun' pleadings present an unfair burden on a defendant, the plaintiff should be required to provide a more definite statement of his complaint[.]").

The Eleventh Circuit has identified four categories of shotgun pleadings. "The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). "The next most common type . . . is a complaint that . . . is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1331-32. "The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1322-23. "Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants

without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323.

S. Patel, F. Patel, and Jones argue that the Amended Complaint falls into all four categories of a shotgun pleading.

> The Complaint, and its accompanying counts, goes on to (1) adopt the allegations of all the preceding counts, (2) is replete with conclusory and vague allegations that, even worse, are upon information and belief, (3) does not separate, or even specifically, name counts against the Bliss Individuals, and (4) asserts multiple claims against multiple defendants without specifying which defendants are responsible for which acts or omissions or which of the defendants the claim is brought against. Indeed, Plaintiffs plead *all* of the counts against *all* of the "Defendants" generally, and fails to plead specific facts tying any specific Defendant to a specific claim.

(S. Patel, F. Patel, & Jones's Br. in Supp. of S. Patel, F. Patel, & Jones's Mot. to Dismiss, at 11 (emphasis in original) (citation omitted).) The Plaintiffs muster no response or opposition to—and thus effectively concede—these arguments. *See Barnes v. AstraZeneca Pharms. LP*, 253 F. Supp. 3d 1168, 1171 (N.D. Ga. 2017). In any event, the Court agrees that the Plaintiffs have improperly asserted claims against the Defendants as a whole, without distinguishing in each count what particular conduct by which of the Defendants gives rise to liability. This defect deprives S. Patel, F. Patel, and Jones of adequate notice of the claims against them and the grounds upon which each claim rests—especially where the allegations pertaining to them are already sparse, and where there are six other named and apparently more unknown Defendants. (Am. Compl. ¶¶ 3-12.)

16

While S. Patel, F. Patel, and Jones seek to dismiss the entire Amended Complaint on this basis, the appropriate response is to give the Plaintiffs "one chance to remedy such deficiencies." *Jackson v. Bank of America, N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018) (citation omitted); *see also Vibe Micro*, 878 F.3d at 1296 ("When a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds."); *Twombly*, 550 U.S. at 590 n.9 (Stevens, J., dissenting) ("The remedy for an allegation lacking sufficient specificity to provide adequate notice is, of course, a Rule 12(e) motion for a more definite statement."). Accordingly, within thirty (30) days of the date of this Order, the Plaintiffs are instructed to replead Counts One through Seven to designate which of the Defendants each claim is brought against, and which of the Defendants are responsible for which alleged acts or omissions.

## C. Curtis's Motion to Dismiss

Curtis moves to dismiss Natural Vitamins' third-party claims against him under Rule 12(b)(2) for lack of personal jurisdiction. He contends that he is a Canadian citizen and resident with no cognizable ties to Georgia, and that he cannot be deemed the "alter ego" of any Party over whom the Court has independent jurisdiction. (Curtis's Mot. to Dismiss, at 2.) Natural Vitamins responds that Segment's undisputed contacts with Georgia can be attributed to Curtis as a result of their close relationship. (Natural Vitamins' Br. in Opp'n

to Curtis's Mot. to Dismiss, at 13-15.) According to Natural Vitamins, Curtis has substantial control over Segment and other companies, which he has used to avoid repaying United Naturals' debt under the Note. (*Id.* at 12-13.) Therefore, Natural Vitamins asks the Court to pierce the corporate veil and assert personal jurisdiction over Curtis as Segment's alter ego. (*Id.* at 14.)

The Eleventh Circuit has endorsed "jurisdictional veil piercing . . . based on the rationale that when a defendant exerts a high degree of control over an entity, the contacts created by the entity are, in reality, created by the defendant." *Mortgage Invs.*, 987 F.3d at 1355. But first, the Court must determine which state's law to apply to the veil-piercing issue. A federal court sitting in diversity is bound by the conflicts-of-law rules of the forum state. *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998). Relying on *Realmark Investment Co. v. American Financial Corp.*, 171 B.R. 692 (Bankr. N.D. Ga. 1994), Curtis argues that the law of the state where Segment was incorporated—British Columbia, Canada—should determine whether to pierce the corporate veil. (Third-Party Def. Curtis's Mot. to Dismiss, at 15-16; Am. Compl. ¶ 1.). Natural Vitamins, meanwhile, cites only Georgia law in support of its veil-piercing arguments without ever explaining the rationale behind that choice. (Natural Vitamins' Br. in Opp'n to Curtis's Mot. to Dismiss, at 10.)

The Court observes that the Note at the heart of Natural Vitamins' claims contains a choice-of-law provision electing Florida law. (Counterclaim

18

& Third-Party Compl., Ex. 1 at 4.) However, this provision does not control the decision to pierce the corporate veil, which is "collateral to and not part of the parties' negotiations or expectations with respect to the contract." *Dassault Falcon Jet Corp. v. Oberflex, Inc.*, 909 F. Supp. 345, 348 (M.D.N.C. 1995).[3] The Georgia Court of Appeals has instead held that traditional choice-of-law rules govern whether a third party external to a corporation has the right to pierce the corporate veil. *Multi-Media Holdings, Inc. v. Piedmont Ctr., 15 LLC*, 262 Ga. App. 283, 286 (2003). In so holding, the court specifically repudiated *Realmark* and its selection of the incorporation state's law, contrary to the position that Curtis stakes out in his Motion. *Id.* Following *Multi-Media Holdings*, the *lex loci contractus* rule applies to a veil-piercing issue in an action such as this sounding in contract. *Id.* at 286 n.1. It provides that:

> [contracts] are to be governed as to their nature, validity and interpretation by the law of the place where they were made, except where it appears from the contract itself that it is to be performed in a State other than that in which it was made, in which case the laws of that sister State will be applied.

*Id.* (quotation marks and alteration omitted) (quoting *General Tel. Co. of Se. v. Trimm*, 252 Ga. 95 (1984)).

Here, the Note between United Naturals, a British Columbia

---

[3] The court in *Dassault*, 909 F. Supp. at 348, rejected the argument that North Carolina law should apply to piercing the corporate veil based on a choice-of-law provision in the purchase order at issue. "The reason for this is that the issue of piercing the corporate veil . . . . involves imposing liability on third-party shareholders as opposed to governing the parties' obligations under the contract." *Id.*

corporation, and Natural Vitamins, a Florida corporation, was neither made nor intended to be performed in Georgia. Even so, an important limitation on the *lex loci contractus* rule means that Georgia law governs in this instance: "the application of another jurisdiction's laws is limited to statutes and decisions construing those statutes. When no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law." *Nationwide Prop. & Cas. Ins. Co. v. Renaissance Bliss, LLC*, 396 F. Supp. 3d 1287, 1294 (N.D. Ga. 2019) (quoting *Frank Briscoe Co. v. Georgia Sprinkler Co.*, 713 F.2d 1500, 1503 (11th Cir. 1983); *see also Coon v. Medical Ctr., Inc.*, 300 Ga. 722, 729 (2017) ("In the absence of a statute, however, at least with respect to a state where the common law is in force, a Georgia court will apply the common law as expounded by the courts of Georgia."). The Court is not aware of any statute in British Columbia or Florida related to piercing the corporate veil, nor have the Parties identified any such statute in their briefs. Accordingly, Georgia law must be controlling on this issue.

"Under the alter ego doctrine, equitable principles are used to disregard the separate and distinct legal existence possessed by a corporation where it is established that the corporation served as a mere alter ego or business conduit of another." *Renee Unltd., Inc. v. City of Atlanta*, 301 Ga. App. 254, 259 (2009) (citation omitted). "The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate

20

fraud or to evade contractual or tort responsibility." *Id.* (citation omitted). To satisfy the alter ego doctrine and pierce the corporate veil, a plaintiff must show that:

> (1) the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs;
> (2) there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and
> (3) to adhere to the doctrine of corporate entity would promote injustice or protect fraud.

*McLean v. Continental Wingate Co., Inc.*, 212 Ga. App. 356, 359 (1994) (citation omitted).

In general, the purpose of piercing the corporate veil is "to hold an individual stockholder liable for debts incurred by the corporation." *TMX Fin., LLC v. Goldsmith*, 352 Ga. App. 190, 210 (2019) (citation omitted). When the elements of the doctrine are satisfied, "piercing the corporate veil also can be used to hold a parent company liable for debts incurred by its wholly owned subsidiary or to hold a 'family of corporations' liable for the debts of each other." *Id.* (citations omitted). However, "the mere operation of corporate business does not render one personally liable for corporate acts. Sole ownership of a corporation by one person or another corporation is not a factor, and neither is the fact that the sole owner uses and controls it to promote his ends." *Amason v. Whitehead*, 186 Ga. App. 320, 322 (1988) (citations omitted). Rather, "the plaintiff must show the owner abused the corporate form by disregarding the separateness of legal entities by commingling [funds] on an interchangeable or

joint basis or confusing the otherwise separate properties, records, or control." *Rasheed v. Klopp Enter., Inc.*, 276 Ga. App. 91, 95 n.4 (2005).

On the Court's review, the case law applying the alter ego doctrine is overwhelmingly concerned with holding a corporation's *shareholders* liable for abuse of the corporate form. *See, e.g.*, *Baillie Lumber Co. v. Thompson*, 279 Ga. 288, 288 (2005); *Johnson v. Lipton*, 254 Ga. 326, 326 (1985); *Farmers Warehouse of Pelham, Inc. v. Collins*, 220 Ga. 141, 142-43 (1964); *Bryant v. Optima Int'l, Inc.*, 339 Ga. App. 696, 697 (2016); *Christopher v. Sinyard*, 313 Ga. App. 866, 868-69 (2012); *Renee Unltd.*, 301 Ga. App. at 255; *Paul v. Destito*, 250 Ga. App. 631, 632, 638-39 (2001); *Derbyshire v. United Builders Supplies, Inc.*, 194 Ga. App. 840, 841 (1990); *Amason*, 186 Ga. App. at 321. This observation is consistent with the plain language of the alter ego standard, which requires proof that "the *stockholders'* disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs[.]" *McLean*, 212 Ga. App. at 359 (emphasis added). Moreover, the Eleventh Circuit has interpreted Florida's comparable standard to forbid piercing the corporate veil against a non-shareholder director, barring some intimate (i.e., spousal) relationship to a shareholder.[4] *Molinos Valle Del Cibao, C. por A. v. Lama*, 633

---

[4] Florida law also sets out a three-factor test to determine whether a plaintiff can pierce the corporate veil:

(1) the *shareholder* dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos

22

F.3d 1330, 1350-51 (11th Cir. 2011).

Although Curtis was a shareholder in United Naturals and Simply Marketing until June 30, 2008, he held no stake in either company at the time United Naturals and Natural Vitamins executed the Note dated November 17, 2015. (Curtis Decl. ¶¶ 4-6, 8-9, 22.) He has never owned shares in Segment or Lighthouse. (Curtis Decl. ¶¶ 22-23.) Accordingly, Georgia law would appear to prevent this Court from piercing the corporate veil against Curtis and, by extension, exercising personal jurisdiction over him. Nonetheless, there is at least one Georgia case in which a corporate officer who did not own shares in the defendant corporation was found personally liable under an alter ego theory. *See Ishak v. Lanier Contractor's Supply Co., Inc.*, 254 Ga. App. 237 (2002). In *Ishak*, a building supply company sued two homebuilders, Ovel Development Company ("ODC") and Ovel Enterprises, Inc. ("OEC"), to recover for unpaid construction materials. The plaintiff added Itimar Kleinberger, the president and sole shareholder of ODC and OEC, and Anosh Ishak, the vice president and sole employee of ODC, as defendants and charged them with the corporate debts as alter egos. The court granted the relief sought against the

---

of the corporation;

(2) the corporate form must have been used fraudulently or for an improper purpose; and

(3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Gasparini v. Pordomingo*, 972 So.2d 1053, 1055 (Fla. Dist. Ct. App. 2008) (emphasis added).

individual defendants, and Ishak appealed. *Id.* The Georgia Court of Appeals upheld the trial court's decision to pierce the corporate veil against Ishak, even though he was not a shareholder in ODC or OEC. *Id.* at 238. Specifically, the evidence showed that Ishak conveyed one of ODC's primary assets to himself without paying adequate consideration and appropriated corporate funds to his personal use. *Id.*

In other cases to pierce the corporate veil, it was similarly obvious that the individual defendants had ignored corporate formalities and merged their personal affairs with those of the corporation. For example, in *Christopher*, 313 Ga App. 866 (2012), a couple filed suit against a two-man construction business and its officers, R. Dennis Christopher and Joe Spell, over uncompleted work and unpaid subcontractors. The evidence showed that the officers:

> never signed the corporation's bylaws; no stock certificates were ever issued; no minutes of corporate meetings were ever kept; no annual registrations for the corporation were filed after 2005; the lots upon which [the corporation] built its houses were titled in Christopher's name and then transferred to [the corporation] at or near closing (and then conveyed to third parties); the corporation did not have a physical location; funds obtained at the closing of the [plaintiffs'] home and during construction were paid to Christopher's and Spell's other businesses; Christopher made undocumented loans to [the corporation]; and Christopher and Spell paid some of the corporation's creditors from their personal funds.

*Id.* at 868. Further, at the closing of the plaintiffs' home, Spell knowingly and falsely executed a seller's affidavit stating that all debts and obligations had been paid. *Id.* at 869. The Georgia Court of Appeals held that this evidence

supported a finding that the corporate form had been abused, and that adherence to the corporate entity would promote injustice and fraud. *Id.*

By contrast, Natural Vitamins' allegations and evidence come nowhere near showing the same degree of personal entanglement between Curtis and Segment. First, Natural Vitamins contends that Curtis has a "broad-based consulting role" with Segment giving him "access to virtually every portion of Segment's business." (Natural Vitamins' Br. in Opp'n to Curtis's Mot. to Dismiss, at 12-13.) Under the consulting agreement, Curtis agreed to assist Segment with sales and marketing, manufacturing, distribution, and ingredient sourcing and to attend periodic meetings related to those areas of the business, including financial review and budgeting meetings as necessary. (*Id.*, Ex. D ¶ 1.2.) But the mere operation of corporate business, absent evidence of fraud or abuse, does not subject Curtis to personal liability for corporate acts. *See Amason*, 186 Ga. App. at 322. At bottom, "[a]ll corporate bodies perforce must operate through individuals," and if anything, Curtis's role as a mere consultant at Segment—rather than a shareholder, director, or officer—cuts against a finding of alter ego status. *Earnest v. Merck*, 183 Ga. App. 271, 273 (1987).

Next, Natural Vitamins describes a WhatsApp exchange purporting to show that Curtis "had the ability to cause Segment to sue [Natural Vitamins] or engage [Natural Vitamins] in a business relationship." (Natural Vitamins' Br. in Opp'n to Curtis's Mot. to Dismiss, at 12.) During the exchange, Curtis

communicated to a Natural Vitamins principal that he "can probably pull [Segment] back and release you if you are interested in making product on the right terms." (*Id.*, Ex. E at 3.) He also sought to "connect legal teams" so that Natural Vitamins could support the lawsuit against Bliss Nutra. (*Id.*, Ex. E at 4.) However, in context, these messages reveal only that Curtis was working to broker a deal between Segment and Natural Vitamins, not that he had the authority to act on Segment's behalf. (*See id.*, Ex. E at 4 ("[Segment] are telling me they have to either add or not add you today. Unless I come back to them with something, they will likely add you."), 5 ("[Segment] are pressing me and i [sic] am trying to make this bottle instead of lawsuit.").) Even the consulting agreement states that Curtis "shall not have any right to legally bind [Segment] to any contractual or other commitments, except if specifically granted such authority by [Segment], in writing." (*Id.*, Ex. D ¶ 1.2.)

As between Curtis and Segment, there are insufficient allegations and evidence of fraud, abuse of the corporate form, or commingling of assets to make a prima facie case for piercing the corporate veil. Natural Vitamins raises a separate argument that, under Curtis's control, Segment, United Naturals, and Lighthouse have conspired in "corporate shell games" to avoid liability for the Note. (*Id.* at 13.) However, Segment and United Naturals do not share any common owners or employees (Feitor Decl. ¶¶ 4-7; Curtis Decl. ¶¶ 22-25), nor do Segment and Lighthouse have any common officers, directors, or employees. (Reply Br. in Supp. of Curtis's Mot. to Dismiss, Ex. 1 at 7.) The only connection

26

between the three companies is that (1) Curtis is the director and chief executive officer of United Naturals, a director of Lighthouse, and a consultant for Segment, and (2) Segment acquired the VIVAZEN trademark from Lighthouse in 2019, which had licensed the brand to United Naturals until its regulatory troubles in late-2015. (*Id.*, Ex. 1 at 6-7; Curtis Decl. ¶¶10-14.) In the Court's view, these facts do not suggest that Curtis, Segment, United Naturals, and Lighthouse are a "family of corporations" such that jurisdiction over one confers jurisdiction over all. *Derbyshire*, 194 Ga. App. at 845 (finding a man and three corporations acted as a unit where he was each corporation's president and sole owner and referred to them as interchangeable; some officers worked for more than one corporation; and the corporations produced a common product and were housed in the same building).

Even so, the Court will grant Natural Vitamins' request to conduct additional discovery in support of its jurisdictional claims. The Eleventh Circuit "long has recognized a qualified right to jurisdictional discovery." *Seiz v. Quirk*, 2013 WL 12290850, at *2 (N.D. Ga. Jan. 3, 2013) (citing *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729-31 (11th Cir. 1982)). "The decision to allow jurisdictional discovery is very much a product of the timing and nature of any jurisdictional discovery request." *Mother Doe I v. Al Maktoum*, 632 F. Supp. 2d 1130, 1146 (S.D. Fla. 2007). Here, the Defendants have been diligently attempting to depose Curtis since at least late-June 2021, and after much resistance, Curtis agreed to sit for a deposition only after briefing had

concluded on his Motion to Dismiss. *See Eaton*, 692 F.2d at 731 (reversing a dismissal for lack of subject matter jurisdiction that was issued just one week before a pivotal deposition). The Court will thus permit Natural Vitamins to amend its response within thirty (30) days of the date of this Order to present any relevant facts uncovered through the deposition or other discovery; Curtis may then file an amended reply within the normal amount of time provided by the Local Rules. The Court will withhold a ruling on the Motion until the conclusion of that process.

### D. Simply Marketing's Motion to Dismiss

Simply Marketing moves to dismiss Natural Vitamins' third-party claims against it under Rule 12(b)(2) for lack of personal jurisdiction. Simply Marketing contends that it is a Canadian corporation with no Georgia contacts and no connection to Natural Vitamins or the Note. (Simply Marketing's Br. in Supp. of Simply Marketing's Mot. to Dismiss, at 2.) Natural Vitamins counters that Simply Marketing has waived any jurisdictional objections by (1) not raising them on a timely motion under Local Rule 7.1(A)(2) and (2) defending this case on the merits for several months. (Natural Vitamins' Br. in Opp'n to Simply Marketing's Mot. to Dismiss, at 7-8.) Moreover, Natural Vitamins contends that personal jurisdiction is proper under subsection (1) of the Georgia long-arm statute based on United Naturals' alleged contacts with this state. (*Id.* at 17.) According to Natural Vitamins, Simply Marketing is a "related company" to United Naturals under the Lanham Act such that any

28

business transacted by United Naturals in Georgia is attributable to Simply Marketing for jurisdiction purposes. (*Id.*)

"[I]t is well-settled that lack of personal jurisdiction is a waivable defect, and that a defendant waives any objection to the district court's jurisdiction over his person by not objecting to it in a responsive pleading or a motion to dismiss[.]" *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1364 (11th Cir. 2006) (citation and alteration omitted). Local Rule 7.1(A)(2) provides that a motion to dismiss must be filed within 30 days after the beginning of discovery unless the filing party has obtained prior permission from the Court to file later. LR 7.1(A)(2), NDGa. Simply Marketing argues that it could not have met this deadline because it was not added to the case until after the start of discovery. (Reply Br. in Supp. of Simply Marketing's Mot. to Dismiss, at 2.) The Court agrees with Simply Marketing that its Motion does not violate the Local Rules, consistent with *McCarthy v. Yamaha Motor Manufacturing Corp.*, 994 F. Supp. 2d 1318, 1322 (N.D. Ga. 2014). In any event, the Court has "discretion to waive a local rule requirement . . . in the interests of justice and efficient disposition[.]" *Puhy v. Delta Air Lines, Inc.*, 833 F. Supp. 1577, 1578 n.1 (N.D. Ga. 1993).

A defendant may also waive a jurisdictional defense when his conduct "does not reflect a continuing objection to the power of the court to act over the defendant's person[.]" *Roberts v. Owings-Corning Fiberglass Corp.*, 101 F. Supp. 2d 1076, 1081 (S.D. Ind. 1999) (quotation marks and citation omitted).

29

Thus far, Simply Marketing has responded to discovery requests, conferred with opposing counsel about its discovery responses, and joined a motion to extend the discovery deadline. (Natural Vitamins' Br. in Opp'n to Simply Marketing's Mot. to Dismiss, at 12.) It has not served its own discovery requests, made any appearances at depositions, or sought any substantive relief from the Court prior to this Motion. The Court finds that "[t]his quantum of participation ranks far below the levels deemed to constitute a waiver[.]" *Matthews v. Brookstone Stores, Inc.*, 431 F. Supp. 2d 1219, 1226 (S.D. Ala. 2006) (participating in other parties' depositions, filing required documents, and joining a request to extend time for a deposition did not constitute a waiver); *see also McCarthy*, 994 F. Supp. 2d at 1322 (appearing at the plaintiffs' depositions, making representations about future involvement in the case to the court, propounding one set of interrogatories, and filing a motion to determine the governing law did not effect a waiver).

Turning now to the Georgia long-arm statute, the "transacting business" provision in subsection (1) confers jurisdiction over a non-resident defendant:

> (1) [if] the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.

*Amerireach.com*, 290 Ga. at 269 (citation omitted). According to Natural Vitamins, subsection (1) is satisfied because United Naturals previously sold VIVAZEN products in Georgia and those contacts can be attributed to Simply

Marketing as a related company. (Natural Vitamins' Br. in Opp'n to Simply Marketing's Mot. to Dismiss, at 17.) But this argument fails the second prong of the "transacting business" standard. Even if United Naturals sold products in this state, and even if Simply Marketing and United Naturals are related companies under the Lanham Act, Natural Vitamins has not shown that its cause of action "arises from or is connected with" any VIVAZEN sales in Georgia. *Amerireach.com*, 290 Ga. at 269.

Natural Vitamins' claims against Simply Marketing arise out of the Note executed between United Naturals and Natural Vitamins on or around November 17, 2015. (Counterclaim & Third-Party Compl. ¶¶ 39-73.) By that time, Simply Marketing had already sold the VIVAZEN trademark to Lighthouse, thus severing the licensor-licensee relationship between Simply Marketing and United Naturals that is the basis of Natural Vitamins' jurisdiction theory. (Curtis Decl. ¶¶ 7,10.) Moreover, the Court can discern no connection—and Natural Vitamins does not suggest any connection—between United Naturals' alleged VIVAZEN sales in Georgia and its default on the Note. Nothing about the terms of the Note suggests that it is related to VIVZEN sales anywhere, much less in Georgia. Accordingly, subsection (1) of the Georgia long-arm statute does not confer personal jurisdiction over Simply Marketing. Because Natural Vitamins raises no other grounds for jurisdiction, the Court will deny its request to conduct jurisdictional discovery as no additional, presently unknown facts could conceivably change this outcome.

## IV.   Conclusion

For the foregoing reasons, the Court GRANTS Defendants Rachana Arora, Karan Arora, and Shruti Shah's Motion to Dismiss [Doc. 97]; GRANTS in part and DENIES in part Defendants Shabana Patel, Faruq Patel, and Phillip Jones's Motion to Dismiss [Doc. 118]; and GRANTS Third-Party Defendant Simply Marketing, Inc.'s Motion to Dismiss [Doc. 178]. The Court reserves a ruling on Third-Party Defendant Steven Curtis Holfeld's Motion to Dismiss [Doc. 152] to allow for jurisdictional discovery and, as appropriate, additional briefing.

SO ORDERED, this ____27th____ day of January, 2022.

THOMAS W. THRASH, JR.
United States District Judge

32