IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SEGMENT CONSULTING
MANAGEMENT, LTD.
a British Columbia, Canada Company,
et al.,

    Plaintiffs,

        v.

BLISS NUTRACETICALS, LLC
a Georgia Limited Liability Company,
et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:20-CV-1837-TWT

## OPINION AND ORDER

This is an action for trademark infringement. It is before the Court on Third-Party Defendant Steven Curtis Holfeld's ("Curtis") Motion to Dismiss [Doc. 152]. The facts and legal standard relevant to this Motion were outlined in an Opinion and Order dated January 27, 2022 ("January 27 Order"). *See Segment Consulting Mgmt., Ltd. v. Bliss Nutraceticals, LLC*, 2022 WL 252309, at \*1-2 (N.D. Ga. Jan. 27, 2022). As explained in the January 27 Order, Curtis has moved to dismiss Third-Party Plaintiff Natural Vitamins Laboratory Corp.'s ("Natural Vitamins") claims against him for lack of personal jurisdiction. In response, the only asserted basis for personal jurisdiction is under the alter ego doctrine. Essentially, Natural Vitamins contends that Curtis, through his corporate ownership and control, has acted as the alter ego

of the Plaintiffs Segment Consulting Management, Ltd. ("Segment") and/or Lighthouse Enterprises Inc. ("Lighthouse"). Because Segment and Lighthouse have consented to personal jurisdiction in this Court,[1] NVL asks the Court to pierce one or both of their corporate veils to exercise personal jurisdiction over Curtis. (Natural Vitamins' Br. in Opp'n to Curtis's Mot. to Dismiss, at 18-19; Natural Vitamins Suppl. Br. in Opp'n to Curtis's Mot. to Dismiss, at 1-2.)

Previously, the Court reserved ruling on Curtis's Motion to Dismiss to allow for jurisdictional discovery and additional briefing. *Segment Consulting Mgmt.*, 2022 WL 252309, at \*1. In particular, Natural Vitamins did not have an opportunity to present Curtis's deposition testimony as he was then refusing to sit for a deposition on jurisdictional grounds. Nonetheless, the Court pointed out several deficiencies in Natural Vitamins' alter ego theory of personal jurisdiction. First, "the case law applying the alter ego doctrine is overwhelmingly concerned with holding a corporation's *shareholders* liable for abuse of the corporate form"; however, there was no evidence that Curtis owned shares in Segment, Lighthouse, or Third-Party Defendants United

---

[1] In its Counterclaim and Third-Party Complaint, Natural Vitamins alleged, and both Segment and Lighthouse admitted, that the "Plaintiffs are subject to the jurisdiction of this Court by virtue of having filed this action." (Counterclaim & Third-Party Compl. ¶ 8; *see also* Segment's Answer to Counterclaim ¶ 8; Lighthouse's Answer to Counterclaim ¶ 8.) *See also Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) ("A litigant may give express or implied consent to the personal jurisdiction of the court.") (alteration omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985)).

Naturals, Inc. ("United Naturals") and Simply Marketing, Inc. ("Simply Marketing") at the operative time. *Id.* at *9 (emphasis in original). Second, Natural Vitamins' evidence did not show the requisite degree of "personal entanglement" between Curtis and Segment to pierce the corporate veil under Georgia law. *Id.* at *10. Finally, the facts did not suggest that, under Curtis's control, Segment, Lighthouse, United Naturals, or Simply Marketing conspired in "corporate shell games" to evade and defraud creditors. *Id.* at *11.

Pursuant to the January 27 Order, Natural Vitamins has filed a supplemental response with additional evidence, including Curtis's deposition testimony, to bolster its jurisdictional arguments. Although the Court authorized Curtis to file a supplemental reply, he declined to do so. As a threshold matter, Natural Vitamins contends that the Court should defer a determination on this jurisdictional question because it is "factually intermeshed" with merits issues. (Natural Vitamins' Suppl. Br. in Opp'n to Curtis's Mot. to Dismiss, at 2.) Indeed, the Fifth Circuit has advised that, "where the factual and jurisdictional issues are completely intermeshed[,] the jurisdictional issues should be referred to the merits, for it is impossible to decide the one without the other."[2] *McBeath v. Inter-American Citizens for*

---

[2] The decisions of the Fifth Circuit, "as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date," constitute binding precedent for district courts in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

3

*Decency Comm.*, 374 F.3d 359, 362-63 (5th Cir. 1967); *see also Nissim Corp. v. ClearPlay, Inc.*, 351 F. Supp. 2d 1343, 1351 (S.D. Fla. 2004) ("In cases where jurisdictional questions are intermeshed with factual questions regarding the merits, a court may hold an evidentiary hearing on those matters or may defer a determination on those jurisdictional issues until trial.") (collecting cases).

Within the Eleventh Circuit, at least one district court has applied this principle in a case where personal jurisdiction and the defendants' liability were each premised on the alter ego doctrine. In *Forbes v. Concord Advice, LLC*, 2020 WL 3250232, at *1-2 (M.D. Fla. Apr. 21, 2020), the plaintiff filed suit against Speedy Servicing, Inc., an online lending company; Concord Advice, LLC, a back-end data analytics company; and Michael Luxenberg, the sole member and manager of Concord, under the Fair Credit Reporting Act ("FCRA"). Speedy and Concord allegedly operated out of a combined headquarters, commingled funds, and shared common employees, officers, and ownership such that they constituted a single business enterprise. Personal jurisdiction was proper over Speedy because it had requested the credit report of a Florida resident, and the plaintiff argued that, as Speedy's alter ego, Luxenberg and/or Concord should be subject to the court's jurisdiction for directing the credit pull. *Id.* at *6. At the dismissal stage, the court declined to make a jurisdictional ruling because "whether Luxenberg and Concord are in fact the alter ego of Speedy, or use Speedy as a front for their activities, goes to both their challenge to personal jurisdiction and directly to the merits of

4

whether they may be liable under the FCRA." *Id.* at *7. The court invited Luxenberg and Concord to raise the issue again at summary judgment or trial.[3]

As in *Forbes*, whether Curtis is actually the alter ego of Segment or Lighthouse bears on both personal jurisdiction and his liability for Natural Vitamins' claims. In Count One, Natural Vitamins alleges that Curtis "has disregarded the corporate structure of United Naturals, Simply Marketing, Segment, and Lighthouse[] and made them a mere instrumentality for the transaction of his affairs." (Counterclaim & Third-Party Compl. ¶ 44.) Therefore, according to Natural Vitamins, it is entitled to pierce the corporate veil and hold Curtis, Segment, Lighthouse, and Simply Marketing directly liable for United Naturals' breach of the Promissory Note ("Note"). (*Id.* ¶¶ 48-50.) In Count Three, Natural Vitamins asserts that Curtis and his various entities engaged in a fraudulent conveyance by transferring United Naturals' assets and rendering it insolvent. (*Id.* ¶¶ 60-61, 65.) Allegedly, this transfer was made to insiders for less than "reasonably equivalent value" and with specific intent to hinder Natural Vitamins' collection on the Note. (*Id.* ¶¶ 62-

---

[3] In so holding, the court relied on similar decisions taken in *Nissim* and *Bayshore TBI, Inc. v. MemberSelect Ins. Co.*, 2019 WL 6696245 (M.D. Fla. Dec. 4, 2019). *See Forbes*, 2020 WL 3250232, at *7. In *Nissim*, the question of personal jurisdiction hinged on whether the defendant had actively induced patent infringement, and was thus inextricably intertwined with a determination on the merits. And in *Bayshore*, an alleged oral contract between the plaintiff and the defendant formed the basis for personal jurisdiction as well as the plaintiff's breach-of-contract claim. In both cases, the courts chose to defer judgment on the issue of personal jurisdiction. *Id.*

65, 68, 70.) In light of the overlap between personal jurisdiction and merits issues, the Court finds that the *Forbes* approach should control in this case.

The Court is also persuaded to reserve a jurisdictional ruling based on the new, unrefuted evidence cited by Natural Vitamins. In the January 27 Order, the Court questioned whether Curtis could be the alter ego of companies in which he did not hold an ownership stake. *See Segment Consulting Mgmt.*, 2022 WL 252309, at *9-10. In particular, the evidence suggested that Curtis had never owned shares in Segment or Lighthouse and was no longer a shareholder in United Naturals or Simply Marketing at the time of the Note and the complained-of asset transfers. *Id.* at *10. However, it now appears that Curtis was in fact the effective owner of Simply Marketing because he merely transferred his shares to another entity in his control—Kirkwall Enterprises Ltd. (Natural Vitamins' Suppl. Br. in Opp'n to Curtis's Mot. to Dismiss, at 8 n.4.) There is also support that Curtis has an indirect or beneficial ownership interest in Lighthouse. In his declaration, Curtis stated, "I do not now own, and have never owned, any shares in Lighthouse[.]" (Curtis Decl. ¶ 23.) But in his deposition, Curtis revealed that Lighthouse is a subsidiary of a corporation called Kaleidoscope Venture Inc. ("Kaleidoscope"), and that both corporations share the same directors, including Curtis. (Curtis Dep. at 81:18-82:5.) When asked whether he has any ownership in Kaleidoscope, Curtis responded, "I don't believe *in my personal capacity* I have ownership of that." (*Id.* at 82:6-20 (emphasis added).) Of course, this half-answer does not rule out an ownership

6

stake in Kaleidoscope through one or more of Curtis's other entities.[4]

As the ownership structures of Simply Marketing and Lighthouse come into focus, so too do the "corporate shell games" that Curtis allegedly engaged in to avoid repaying United Naturals' debt to Natural Vitamins. (Natural Vitamins' Br. in Opp'n to Curtis's Mot. to Dismiss, at 13.) It is undisputed that Curtis, on behalf of United Naturals, executed the Note with Natural Vitamins on or around November 17, 2015. (Counterclaim & Third-Party Compl., Ex. 1 at 5). Curtis claims that, by the next month, United Naturals encountered "regulatory challenges" that resulted in its entire inventory being seized, and the company went out of business in early-2016 without making any payments on the Note. (Curtis's Mot. to Dismiss, at 3, 9-11.) According to Natural Vitamins, one reason that United Naturals could not service its debt is because Lighthouse, under Curtis's direction, cancelled United Naturals' "most valuable asset"—the license to the VIVAZEN trademark.[5] (Natural Vitamins' Suppl. Br. in Opp'n to Curtis's Mot. to Dismiss, at 8.) Further, Lighthouse had only recently acquired the VIVAZEN trademark from Simply Marketing on

---

[4] Adding to the confusion, Lighthouse declined to reveal its owners in response to a specific interrogatory from Defendant Vivazen Botanicals LLC ("Vivazen Botanicals"). (Lighthouse's Resp. to Vivazen Botanicals' Interrog. No. 1.)

[5] Curtis admitted in his Motion to Dismiss that, "in the wake of the regulatory challenges," Lighthouse elected to terminate United Naturals' VIVAZEN license. (Curtis's Mot. to Dismiss, at 16.)

October 31, 2015, with Curtis signing for both entities on opposite sides of the transaction. (*Id.*, Ex. D at 8.)

Natural Vitamins contends that this series of transactions, dominated by Curtis and culminating in Lighthouse's sale of the trademark to Segment, worked a fraud on United Naturals' creditors and warrants piercing the corporate veil as to Curtis. (*Id.* at 8.) As explained in the January 27 Order,

> [t]he concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility. To satisfy the alter ego doctrine and pierce the corporate veil, a plaintiff must show that:
>
> (1) the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs;
>
> (2) there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and
>
> (3) to adhere to the doctrine of corporate entity would promote injustice or protect fraud.

*Segment Consulting Mgmt.*, 2022 WL 252309, at *9 (quotation marks and citations omitted). While the Court does not take a position on whether Natural Vitamins' current evidence is sufficient to meet this standard, it has made substantial progress on its alter ego theory since the first round of briefing on the Motion to Dismiss. Accordingly, for the foregoing reasons, the Court DENIES Curtis's Motion to Dismiss without prejudice, permitting Curtis to raise his personal jurisdiction arguments again at summary judgment or trial.

SO ORDERED, this \_\_\_17th\_\_\_ day of March, 2022.

*/s/ Thomas W. Thrash*
THOMAS W. THRASH, JR.
United States District Judge