IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BLUE MOUNTAIN HOLDINGS LTD.
a British Columbia, Canada
Corporation, et al.,

Plaintiffs,

v.

BLISS NUTRACETICALS, LLC
a Georgia Limited Liability Company,
et al.,

Defendants.

CIVIL ACTION FILE
NO. 1:20-CV-1837-TWT

## OPINION AND ORDER

This is an action for trademark infringement. It is before the Court on
Defendants Bliss Nutraceticals, LLC, Faruq Patel, Shabana Patel, and Phillip
Jones's Motion for Summary Judgment [Doc. 233], Defendants Natural
Vitamins Laboratory Corp., Vivazen Botanicals, LLC, Karan Arora, Rachana
Arora, and Shruti Shah's Motion for Summary Judgment [Doc. 250], Plaintiffs
Blue Mountain Holdings Ltd. and Lighthouse Enterprises, Inc.'s Motion for
Partial Summary Judgment [Doc. 305], and Plaintiff Blue Mountain Holdings
Ltd.'s Motion for Partial Summary Judgment [Doc. 318]. For the reasons set
forth below, the Court GRANTS Defendants Bliss Nutraceticals, LLC, Faruq
Patel, Shabana Patel, and Phillip Jones's Motion for Summary Judgment [Doc.
233], DENIES as moot Defendants Natural Vitamins Laboratory Corp.,
Vivazen Botanicals, LLC, Karan Arora, Rachana Arora, and Shruti Shah's

Motion for Summary Judgment [Doc. 250], DENIES Plaintiffs Blue Mountain Holdings Ltd. and Lighthouse Enterprises, Inc.'s Motion for Partial Summary Judgment [Doc. 305], and DENIES as moot Plaintiff Blue Mountain Holdings Ltd.'s Motion for Partial Summary Judgment [Doc. 318].

## I.   Background

This case arises from the manufacture and sale of kratom-based powder, capsule, and beverage products that allegedly infringe on the registered trademark "VIVAZEN." The Plaintiffs Lighthouse Enterprises, Inc. and Blue Mountain Holdings Ltd. (formerly Segment Consulting Management, Ltd.) claim to hold all equitable and legal interests in the VIVAZEN mark, although that fact is contested in the pending Motions for Summary Judgment. As an initial matter, Defendants Natural Vitamins Laboratory Corp., Vivazen Botanicals, LLC, Karan Arora, Rachana Arora, and Shruti Shah have reached a settlement of all claims, counterclaims, and third-party claims with the Plaintiffs and Third-Party Defendant Steven Curtis Holfeld. Accordingly, the Motions for Summary Judgment involving only those parties are denied as moot, leaving for resolution the Motions filed by or against Defendants Bliss Nutraceticals, LLC, Faruq Patel, Shabana Patel, and Phillip Jones (collectively, "Bliss Nutra").

Lighthouse is a Barbados holding company with no officers, employees, or customers and no history of selling or marketing VIVAZEN products in its own right. (Bliss Nutra's Statement of Undisputed Material Facts in Supp. of

Bliss Nutra's Mot. for Summ. J. ¶¶ 2-4.)[1] Lighthouse acquired the VIVAZEN brand on or about October 31, 2015, from Simply Marketing, Inc. and successfully registered the mark with the United States Patent and Trademark Office (the "USPTO") in early 2017. (*Id.* ¶¶ 12-13.) After licensing and attempting to sell the brand for a few years, Lighthouse executed a "Brand Sale Agreement" on January 3, 2019, that purported to sell, or assign, all intellectual property in VIVAZEN to Blue Mountain. (Pls.' Statement of Additional Undisputed Material Facts in Opp'n to Bliss Nutra's Mot. for Summ. J. ¶¶ 47-48.) The payment schedule in the original agreement was extended by the "Amended and Restated Brand Sale Agreement," executed on December 23, 2020. (*Id.* ¶¶ 49-50.)

Bliss Nutra asserts, and the Plaintiffs dispute, that the Brand Sale Agreement and the Amended and Restated Brand Sale Agreement were in fact not an assignment, but a license to use the VIVAZEN mark. (Pls.' Resp. to Bliss Nutra's Statement of Undisputed Material Facts in Supp. of Bliss Nutra's Mot. for Summ. J. ¶¶ 16-21.) Under both contracts, Lighthouse retained a security interest in the mark to secure payment of the purchase price from Blue Mountain. (Pls.' Br. in Opp'n to Bliss Nutra's Mot. for Summ. J., Campbell

---

[1] The operative facts on the Motions for Summary Judgment are taken from the parties' Statements of Undisputed Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

Decl., Ex. H at PLTF00591-92 & Ex. I at PLTF00442-43.) To protect the value of its security interest, Lighthouse also held a contractual right to exercise quality control over Blue Mountain's production, marketing, and sale of VIVAZEN products, but it is undisputed that Lighthouse never exercised this right at any time. (Pls.' Resp. to Bliss Nutra's Statement of Undisputed Material Facts in Supp. of Bliss Nutra's Mot. for Summ. J. ¶¶ 25-28.)

In January 2018, almost a year after Lighthouse registered the VIVAZEN mark with the USPTO, Bliss Nutra began selling herbal dietary supplements under the name "Vivazen Botanicals." (Pls.' Statement of Material Facts in Supp. of Pls.' Mot. for Partial Summ. J. ¶ 3.) Those products were manufactured and bottled exclusively for Bliss Nutra by Natural Vitamins. (*Id.* ¶ 4.) On October 22, 2018, Natural Vitamins applied with the USPTO to register the VIVAZEN mark in its name and, as a specimen, attached a photograph of a Vivazen Botanicals powder supplement that was produced for Bliss Nutra. (*Id.* ¶¶ 5-9.) Natural Vitamins then initiated a trademark cancellation action against Lighthouse in the USPTO's Trademark Trial and Appeal Board (the "TTAB"), claiming abandonment as the sole grounds for cancelling Lighthouse's registration of the mark. (*Id.* ¶¶ 11-12.) But on February 25, 2020, the TTAB dismissed the cancellation proceeding with prejudice in accordance with a Stipulation of Dismissal filed by Natural Vitamins. (*Id.* ¶¶ 14-15.)

4

Shortly thereafter, on March 9, 2020, Bliss Nutra submitted an application to register the mark "VIVAZEN BOTANICALS" with the USPTO. (*Id.* ¶ 16.) Bliss Nutra's specimen included some of the same products depicted in Natural Vitamins' registration application. (*Id.* ¶ 18.) Less than three months later, the USPTO issued a non-final office action in which it refused to register VIVAZEN BOTANICALS because it viewed the word BOTANICALS as merely descriptive. (*Id.* ¶ 20.) Bliss Nutra declined to respond to the USPTO's correspondence, abandoning its registration attempt, and stopped selling Vivazen Botanicals products in March or April 2020. (*Id.* ¶¶ 19, 21.)

## II.   Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

5

### III.   Discussion

Bliss Nutra moves for summary judgment on its affirmative defense that the Plaintiffs abandoned and thus cannot assert any rights in the VIVAZEN mark. Bliss Nutra offers two grounds for its abandonment defense: first, that there is no evidence either Lighthouse or Blue Mountain used the mark in commerce from the time Lighthouse purchased it in 2015 until Blue Mountain was formed in 2019, and second, that Lighthouse issued Blue Mountain a "naked license" to use the mark in 2019. (Def. Bliss Nutra's Br. in Supp. of Def. Bliss Nutra's Mot. for Summ. J., at 1.) The Court does not address the first ground due to remaining issues of material fact, as even Bliss Nutra concedes on reply. (Reply Br. in Supp. of Bliss Nutra's Mot. for Summ. J., at 4.) In response, the Plaintiffs move for summary judgment on the same defense, arguing that Bliss Nutra is precluded from claiming abandonment by res judicata. (Pls.' Br. in Supp. of Pls.' Mot. for Summ. J., at 5.) The Court turns its attention first to the res judicata argument before reaching, if necessary, the merits of the abandonment defense.

### A.  Res Judicata

The doctrine of res judicata, also known as claim preclusion, bars parties from relitigating any claims or defenses that were raised or could have been raised in an earlier proceeding. *See Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020); *Maldonado v. U.S. Att'y Gen.*, 664 F.3d 1369, 1375 (11th Cir. 2011). There are four essential elements to res

judicata: (1) a final judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) involving the same parties or their privities in both cases, and (4) involving the same cause of action in both cases. *See Maldonado*, 665 F.3d at 1375. According to the Plaintiffs, Bliss Nutra's abandonment defense is precluded by Natural Vitamins' trademark cancellation action against Lighthouse. (Pls.' Br. in Supp. of Pls.' Mot. for Summ. J., at 3.) In that earlier proceeding, Natural Vitamins also sought to cancel Lighthouse's VIVAZEN registration on abandonment grounds until the case was dismissed with prejudice in February 2020.

Only Natural Vitamins and Lighthouse—not Bliss Nutra—were parties to the cancellation action. In general, a nonparty is not subject to claim preclusion based on the "deep-rooted historic tradition that everyone should have his own day in court." *Taylor v. Sturgell*, 553 U.S. 880, 892-93 (2008) (quotation marks omitted). The Supreme Court, though, has recognized six exceptions to this rule, including where a substantive legal relationship existed between the person to be bound and a party to the original judgment. *See id.* at 894. "Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor. These exceptions originated as much from the needs of property law as from the values of preclusion by judgment." *Id.* (quotation marks and citation omitted); *cf. Miller's Ale House, Inc. v. Boyton Carolina Ale House, LLC*, 702 F.3d 1312, 1317 n.6 (11th Cir. 2012) ("For purposes of issue preclusion, an

7

assignee of a trademark steps into the shoes of the assignor." (quotation marks omitted)).

The Plaintiffs contend that Bliss Nutra was in a substantive legal relationship with Natural Vitamins because the two assumed a "shared property right" in the VIVAZEN mark. (Pls.' Br. in Supp. of Pls.' Mot. for Summ. J., at 10-11.) As evidence, the Plaintiffs point to Natural Vitamins' and Bliss Nutra's trademark registration applications with the USPTO. To show how Natural Vitamins used the VIVAZEN mark in commerce, its application included an image of a Vivazen Botanicals product that was manufactured solely for Bliss Nutra. Then, when Bliss Nutra tried to register the VIVAZEN BOTANICALS mark more than a year later, it provided images of the same product shown in Natural Vitamins' application. The Plaintiffs claim that Natural Vitamins and Bliss Nutra, in seeking to register similar marks for the same product at different times, must have been the assignor and assignee of the VIVAZEN brand (whether legitimate or not). (Reply Br. in Supp. of Pls.' Mot. for Summ. J., at 7.) If true, that relationship would satisfy the privity element of res judicata. The evidence, however, does not fit the Plaintiffs' narrative.

At most, the record shows that Natural Vitamins manufactured Vivazen Botanicals products for Bliss Nutra and that both companies attempted to register similar marks using the VIVAZEN name approximately 17 months apart. But a mere business arrangement between a supplier and its customer

does not rise to the level of substantive legal relationship contemplated in *Taylor*. *See Taylor*, 553 U.S. at 894 (describing relationships that alter a person's rights to own, use, or possess property). Nor does Bliss Nutra's trademark application prove that it is the successor-in-interest or co-owner of any trademark rights belonging to Natural Vitamins. There is simply no evidence of any agreement between Bliss Nutra and Natural Vitamins to that effect. *Contra Axiom Worldwide, Inc. v. Excite Med. Corp.*, 591 F. App'x 767, 768-70, 773 (11th Cir. 2014) (tracing the conveyance of assets, including purported trademark rights, from the original owner to its various successors); *Peter Coppola Beauty, LLC v. Casaro Labs, Ltd.*, 108 F. Supp. 3d 1323, 1333 (S.D. Fla. 2015) ("Mr. Coppola assigned the trademark to Plaintiff pursuant to an 'Intellectual Property Assignment' during the pendency of the Prior Litigation."). On this record, the Court concludes that Bliss Nutra was not in privity with Natural Vitamins for the TTAB proceeding and may move forward with its abandonment defense in this Court.

## B. Trademark Abandonment

As stated above, Bliss Nutra contends that Lighthouse abandoned its trademark rights by granting Blue Mountain a naked license to use the VIVAZEN mark. When a trademark owner licenses the use of a mark to a third party, it has not only the right but also the duty to control the quality of goods or services sold under that mark. Otherwise, without quality control, there is a danger that the public will be deceived by substandard products bearing the

9

mark. *See* 3 McCarthy on Trademarks and Unfair Competition § 18:48 (5th ed.). Naked licensing occurs when the licensor fails to exercise adequate quality control over its licensee; the potential consequences for the licensor are severe, including the forfeiture of its rights in the mark. *See Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1022 n.6 (11th Cir. 1989); *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 515-16 (9th Cir. 2010) ("We have previously declared that naked licensing is *inherently deceptive* and constitutes abandonment of any rights to the trademark by the licensor." (quotation marks omitted) (emphasis in original)).

As a threshold matter, the Plaintiffs contend that there was never any license at all—and consequently no naked license—between Lighthouse and Blue Mountain. (Pls.' Br. in Opp'n to Bliss Nutra's Mot. for Summ. J., at 17.) Instead, the Plaintiffs claim that Lighthouse assigned the VIVAZEN brand to Blue Mountain under the Brand Sale Agreement, subject to Lighthouse's security interest for the outstanding balance on the purchase price. (*Id.*) A license gives one party the right to use another's mark in exchange for a royalty or other payment, whereas an assignment is an outright sale of all ownership rights in a mark. *See* 3 McCarthy on Trademarks and Unfair Competition § 18:1 (5th ed.). To determine whether a contract for trademark rights is a license or an assignment, courts are governed not by the contract's form or labels, but by the actual legal effect of its terms. *See id.* § 18:5; *cf. Waterman v. Mackenzie*, 138 U.S. 252, 256 (1891) ("Whether a transfer of a particular

10

right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions.").

The Brand Sale Agreement is, of course, called a sale and purports to "sell, assign and transfer . . . all of [Lighthouse's] right, title and interest in and to . . . the name VIVAZEN" to Blue Mountain (then named 1192444 B.C. Ltd.). (Pls.' Br. in Opp'n to Bliss Nutra's Mot. for Summ. J., Campbell Decl., Ex. H at PLTF00589 ¶ 1(a).) But the contract's substantive provisions, the Court finds, fall well short of its stated purpose. First, under paragraph 12, Blue Mountain did not receive legal title to the VIVAZEN mark with the USPTO and is not entitled to legal title until it has paid off the full purchase price. (*Id.* at PLTF00593 ¶ 12.) In the meantime, although Blue Mountain is allowed to register the VIVAZEN brand in new jurisdictions, any new trademark registration must be made in Lighthouse's name, not Blue Mountain's, and Lighthouse continues to have a "sufficient ownership interest" to protect the mark. (*Id.* ¶¶ 11, 12) *Contra Mercado-Salinas v. Bart Enters. Int'l, Ltd.*, 852 F. Supp. 2d 208, 218 (D.P.R. 2012) (finding an assignment where the contract granted the assignee "all rights in the Mark which are afforded to owners of trademarks," including "the right to seek and obtain trademark protection and/or registration of the Mark in its name" (quotation marks omitted)).

Second, the Brand Sale Agreement places significant constraints on Blue Mountain's use of the VIVAZEN mark so long as any amount of the purchase price remains outstanding. To illustrate, Blue Mountain may not license VIVAZEN rights to any affiliated company or third party, except in compliance with two redacted paragraphs, nor may Blue Mountain transfer legal or beneficial interest in the mark to anyone without Lighthouse's prior written consent. (Pls.' Br. in Opp'n to Bliss Nutra's Mot. for Summ. J., Campbell Decl., Ex. H at PLTF00591 ¶ 9(a).) The agreement also restricts how Blue Mountain may manufacture, distribute, and sell kratom-based and other trademarked products. (*Id.* at PLTF00592 ¶ 10.) And if, among other things, Lighthouse "reasonably believes" that any harm may be caused to VIVAZEN's goodwill, then Lighthouse has the right to force Blue Mountain to immediately modify or cease its use of the mark. (*Id.* at PLTF00593 ¶ 13.) These restrictions were carried over into the Amended and Restated Brand Sale Agreement in December 2020.[2] (Pls.' Br. in Opp'n to Bliss Nutra's Mot. for Summ. J., Campbell Decl., Ex. I at PLTF00442-45.)

As the Fifth Circuit has recognized, "an agreement that sets forth many duties and rights between the parties that are inconsistent with an assignment

---

[2] Because the relevant provisions of the Brand Sale Agreement and the Amended and Restated Brand Sale Agreement are substantively identical, the Court refers to them collectively as the Brand Sale Agreement from this point forward.

. . . does not constitute an assignment." *ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 598 (5th Cir. 2003) (quotation marks omitted). Applied here, this principle counsels in favor of construing the Brand Sale Agreement as a license rather than an assignment. Although the contract nominally transferred all interests in the VIVAZEN mark to Blue Mountain, it then clawed back traditional ownership rights to license or assign the mark to third parties, to manufacture and sell products under the mark without conditions, and to register the mark in new territories under the assignee's name. *Contra Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 846 (6th Cir. 2013) ("The contract does not put a time limit or any other conditions on exercising the right. The contract does not forbid assignment or transfer or sub-licensing. Instead, it provides for an unqualified right to use and assign—a grant indistinguishable from ownership."). In the end, Blue Mountain cannot even claim legal title to the mark. And any default under the agreement, if not cured, allows Lighthouse to recapture ownership through its security interest. (Pls.' Br. in Opp'n to Bliss Nutra's Mot. for Summ. J., Campbell Decl., Ex. H at PLTF00594.) *See Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1339 (Fed. Cir. 2006) (describing a reversionary interest as "a factor weighing in favor of the agreement being a license rather than an assignment").

The final question for the Court is whether the Brand Sale Agreement was a naked license such that Lighthouse has abandoned its rights in the VIVAZEN mark. A naked licensing claim demands a high standard of proof

13

since even minimal quality control may be enough to preserve a trademark. *See FreecycleSunnyvale*, 626 F.3d at 514; *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 387 (5th Cir. 1977). Like the license versus assignment issue, whether there has been adequate control under a licensing arrangement depends on substance, not form. *See Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 596 (9th Cir. 2002) (collecting cases). So even if a license lacks formal inspection and control procedures, it is not naked when, for example, the parties "have engaged in a close working relationship, and may justifiably rely on each parties' intimacy with standards and procedures to ensure consistent quality, and no actual decline in quality standards is demonstrated[.]" *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1121 (5th Cir. 1991); *see also Barcamerica Int'l*, 289 F.3d at 596.

The Plaintiffs argue that paragraphs 11 and 13 of the Brand Sale Agreement gave Lighthouse the right to control the quality of Blue Mountain's products. (Pls.' Br. in Opp'n to Bliss Nutra's Mot. for Summ. J., at 19-20.) But in the same breath, they admit that Lighthouse never in fact exercised this contractual right. (*Id.* at 20.) This is a critical admission since most courts require *actual control*, not a mere right to control, to defeat a trademark abandonment claim. *See, e.g.*, 3 McCarthy on Trademarks and Unfair Competition § 18:58 ("Not only should there be a right and a duty to control, but that right and duty must be actually exercised by the licensor."); *Ritchie v.*

14

*Williams*, 395 F.3d 283, 290 (6th Cir. 2005) ("Most courts take the position that the existence of a legal right of the licensor to control the quality of its licensee's activities is neither necessary nor sufficient, since it is the control in fact of the quality of the licensee's good or services which is dispositive." (citation and alterations omitted)); *General Motors Corp. v. Gibson Chem. & Oil Corp.*, 786 F.2d 105, 110 (2d Cir. 1986) ("The critical question in determining whether a licensing program is controlled sufficiently by the licensor to protect his mark is whether the licensees' operations are policed adequately to guarantee the quality of the products sold under the mark.").

In *Barcamerica International*, the Ninth Circuit clarified just how much quality control is expected for another edible product—wine. There, the trademark owner, Barcamerica, had granted Renaissance Vineyards a license in 1988 and 1989 to use the "Da Vinci" mark on its wines. Years later, an Italian wine producer that was also selling under the Da Vinci name argued that Barcamerica had lost its rights in the mark through naked licensing. *See Barcamerica Int'l*, 289 F.3d at 592-93. The Ninth Circuit agreed. Not only did the 1988 and 1989 licenses lack any quality control provisions, the court found, but there was also no evidence that Barcamerica was familiar with Renaissance's own efforts to control quality. *See id.* at 596-97. The sole evidence of control was that Barcamerica's principal had occasionally, randomly tasted Renaissance's wines and had relied on the reputation of Renaissance's deceased winemaker. *See id.* At the very least, the court

15

explained, Barcamerica or a designated expert should have been sampling the wines each year in an organized manner. *See id.* at 598. The court also dismissed Barcamerica's argument that there was no harm to the public since Renaissance made good wine. "What matters," the court emphasized, "is that Barcamerica played no meaningful role in holding the wine to a standard of quality—good, bad, or otherwise." *Id.*

Similarly, the record in this case shows that Lighthouse has engaged in no meaningful supervision or inspection of products bearing the VIVAZEN mark. The Brand Sale Agreement contains no formulas or ingredient lists, no packaging instructions, no sales procedures, and no other requirements related to product quality. Although the contract unquestionably provides the means for Lighthouse to conduct quality control, this fact does not make the license valid without some indicia of actual control. Lighthouse is a holding company— it does not have any officers, employees, or customers—and it has never directly used the VIVAZEN mark itself. (Bliss Nutra's Statement of Undisputed Material Facts ¶¶ 2-4.) During their depositions, Blue Mountain's and Lighthouse's corporate representatives revealed that Lighthouse does not exercise any quality control over Blue Mountain's operations and does not inspect any of Blue Mountain's products. (*Id.* ¶ 28.) As in *Barcamerica International*, it would be reasonable to expect Lighthouse to periodically sample the products manufactured and sold by Blue Mountain. Nor is there any evidence that Lighthouse reasonably relied on Blue Mountain's quality

16

control measures based on their past working relationship, if any.

It is irrelevant whether Blue Mountain has done an "exceptional job" at manufacturing VIVAZEN products "of the highest quality," as the Plaintiffs claim. (Pls.' Br. in Opp'n to Bliss Nutra's Mot. for Summ. J., at 20; *see also* Pls.' Resp. to Bliss Nutra's Statement of Undisputed Material Facts ¶¶ 25-28.) The purpose of quality control is not to produce goods or services of high quality, but of *consistent* quality—whether high, low, or middle—so that consumers know what to expect from a given mark. *See Barcamerica Int'l*, 289 F.3d at 598; *Eva's Bridal Ltd. v. Halanick Enters., Inc.*, 639 F.3d 788, 790 (7th Cir. 2011). That plainly did not happen in this case. Also, the Plaintiffs cannot avoid summary judgment by vaguely implying that some due diligence may have occurred before the Brand Sale Agreement. (Pls.' Br. in Opp'n to Bliss Nutra's Mot. for Summ. J., at 20, 22 n.35.) The summary judgment standard requires the Plaintiffs to present *affirmative evidence*, not conclusory rebuttals, to establish a triable issue of fact. The burden is not on Bliss Nutra to prove specifically that no due diligence occurred when nothing in the record suggests otherwise and when it has already demonstrated Lighthouse's lack of control by uncontroverted evidence.

Based on the available evidence, the Court concludes that Lighthouse engaged in naked licensing of the VIVAZEN mark and forfeited its rights in the mark. This conclusion, Bliss Nutra contends, defeats all seven of the claims

asserted in the First Amended Complaint.[3] (Bliss Nutra's Br. in Supp. of Bliss Nutra's Mot. for Summ. J., at 14.) Indeed, the Eleventh Circuit has advised that "a defendant who successfully shows that a trademark plaintiff has abandoned a mark is free to use the mark without liability to the plaintiff." *Cumulus Media, Inc. v. Clear Channel Comms., Inc.*, 304 F.3d 1167, 1173 (11th Cir. 2002). Also, "[c]ourts may use an analysis of federal infringement claims as a measuring stick in evaluating the merits of state law claims of unfair competition." *Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1333 (11th Cir. 2008) (quotation marks and citation omitted). Following this guidance, Counts One through Six fail since each turns on Bliss Nutra's use of the VIVAZEN mark and ensuing harm to the Plaintiffs' trademark interests. Separately, Count Seven fails since the Plaintiffs have obtained the only relief available under Georgia's Uniform Deceptive Trade Practices Act— an injunction prohibiting Bliss Nutra from selling any products with the word VIVAZEN [Doc. 26]. *See Bolinger v. First Multiple Listing Serv., Inc.*, 838 F. Supp. 2d 1340, 1364 (N.D. Ga. 2012).

---

[3] After Bliss Nutra filed the Motion for Summary Judgment now under consideration, the Plaintiffs amended their complaint for a second time [Doc. 331] but did not add, rearrange, or remove any of the previously asserted claims.

## IV.   Conclusion

For the foregoing reasons, the Court GRANTS Defendants Bliss Nutraceticals, LLC, Faruq Patel, Shabana Patel, and Phillip Jones's Motion for Summary Judgment [Doc. 233], DENIES as moot Defendants Natural Vitamins Laboratory Corp., Vivazen Botanicals, LLC, Karan Arora, Rachana Arora, and Shruti Shah's Motion for Summary Judgment [Doc. 250], DENIES Plaintiffs Blue Mountain Holdings Ltd. and Lighthouse Enterprises, Inc.'s Motion for Partial Summary Judgment [Doc. 305], and DENIES as moot Plaintiff Blue Mountain Holdings Ltd.'s Motion for Partial Summary Judgment [Doc. 318]. The Clerk of the Court is DIRECTED to enter judgment in favor of Defendants Bliss Nutraceticals, LLC, Faruq Patel, and Shabana Patel on Counts One through Seven of the Second Amended Complaint and in favor of Defendant Phillip Jones on Counts One, Two, Four, Five, and Seven of the Second Amended Complaint.

SO ORDERED, this ___27th___ day of June, 2022.


THOMAS W. THRASH, JR.
United States District Judge