IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BLUE MOUNTAIN HOLDINGS LTD.
a British Columbia, Canada Company,
et al.,

    Plaintiffs,

       v.

BLISS NUTRACETICALS, LLC
a Georgia Limited Liability Company,
et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:20-CV-1837-TWT

**OPINION AND ORDER**

This is an action for trademark infringement. It is before the Court on the Plaintiffs' Motion for Reconsideration [Doc. 350]. For the reasons set forth below, the Plaintiffs' Motion for Reconsideration [Doc. 350] is DENIED.

### I.   Background

This case arises from the manufacture and sale of kratom-based powder, capsule, and beverage products that allegedly infringe on the registered trademark "VIVAZEN." The Plaintiffs Lighthouse Enterprises, Inc. and Blue Mountain Holdings Ltd. claim to hold all equitable and legal interests in the VIVAZEN mark. However, in a summary judgment order dated June 27, 2022 (the "Order"), this Court held that Lighthouse had abandoned its trademark rights by issuing Blue Mountain a naked license—called the "Brand Sale Agreement"—to use the mark. *See Blue Mountain Holdings Ltd. v. Bliss*

*Nutraceticals, LLC*, 2022 WL 2316386, at *6 (N.D. Ga. June 27, 2022). On that basis, the Court determined that neither Lighthouse nor Blue Mountain could pursue trademark infringement claims under the federal Lanham Act or the common law against the moving Defendants (collectively, "Bliss Nutra"). *See id.* The Plaintiffs had argued that res judicata barred Bliss Nutra's trademark abandonment defense, citing evidence that Bliss Nutra was in privity with Natural Vitamins Laboratory Corp. in an earlier trademark cancellation proceeding against Lighthouse. *See id.* at *3. The Court disagreed and found that the evidence instead showed a mere supplier-customer relationship between the two companies. *See id.* Now, the Plaintiffs seek reconsideration of these holdings to correct mistakes that—they claim—render the Order "improper and vulnerable to reversal on appeal." (Pls.' Br. in Supp. of Pls.' Mot. for Reconsideration, at 4.)

## II.  Legal Standard

"The decision to alter or amend judgment is committed to the sound discretion of the district judge and will not be overturned on appeal absent an abuse of discretion." *Am. Home Assurance Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1238-39 (11th Cir. 1985). Although the Federal Rules of Civil Procedure do not specifically authorize motions for reconsideration, they are common in practice. Local Rule 7.2 states that motions for reconsideration are not to be filed "as a matter of routine practice," but only when "absolutely necessary." LR 7.2(E), NDGa. In particular, a party may move for

reconsideration when there is (1) newly discovered evidence, (2) an intervening change in controlling law, or (3) the need to correct clear error or prevent manifest injustice. *See Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1383 (11th Cir. 2010). A manifest error of law is "the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Durden v. State Farm Fire & Cas. Co.*, 2017 WL 3723118, at *6 (N.D. Ga. Aug. 29, 2017) (citation omitted). By contrast, a motion for reconsideration is not a "vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments to test whether the Court will change its mind." *Brogdon ex rel. Cline v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000).

### III.   Discussion

At the outset of their Motion for Reconsideration, the Plaintiffs make a dumbfounding and ultimately self-defeating admission: because they did not "foresee" the Court ruling against them on summary judgment, they did not clearly and accurately brief the "dispositive facts and legal landscape" governing naked licenses. (Pls.' Br in Supp. of Pls.' Mot. for Reconsideration, at 3-4.) Now, in an effort to correct this serious blunder, the Plaintiffs raise new legal arguments and rely on new (though previously available) pieces of evidence to preserve their rights in the VIVAZEN mark. But of course, the standard for reconsideration forbids this kind of do-over when the new arguments and evidence "could have been raised prior to the entry of

judgment." *Cummings v. Dep't of Corrs.*, 757 F.3d 1228, 1234 (11th Cir. 2014) (citation omitted). Meanwhile, the Plaintiffs' remaining complaints with the Order are rehashed from their summary judgment briefs, making them also inappropriate on a motion for reconsideration. As explained below, the Court is not persuaded by any of the Plaintiffs' arguments, old or new, to reconsider the Order.

### A. Whether the Brand Sale Agreement Was an Assignment or a License

First, the Plaintiffs ask the Court to reverse its holding that the Brand Sale Agreement was a license and not a sale, or assignment, of the VIVAZEN mark. (Pls.' Br. in Supp. of Pls.' Mot. for Reconsideration, at 12-14.) In support of this argument, the Plaintiffs accuse the Court of disregarding important evidence that shows their intent to execute an assignment, including the depositions of Blue Mountain, Steven Curtis, and Colin Partridge as well as the Brand Sale Agreement itself. (*Id.* at 13.) At most, this evidence suggests that the Plaintiffs superficially labeled the Agreement an assignment in their minds and on paper. But as the Order explained, the relevant factor in distinguishing between an assignment and a license is not the subjective name given to the transaction, but the actual legal effect of its provisions.[1] *See Blue*

---

[1] For the first time ever on reply, the Plaintiffs argue that Canadian law should control the interpretation of the Brand Sale Agreement. (Reply Br. in Supp. of Pls.' Mot. for Reconsideration, at 3-4 n.3.) This is a double violation of the longstanding rules governing motions practice: federal courts do not consider arguments that are presented for the first time either on reconsideration or in a reply brief. *See Herring v. Secretary, Dep't of Corrs.*,

*Mountain Holdings*, 2022 WL 2316386, at *4; *see also, e.g.*, *Edwin K. Williams & Co., Inc. v. Edwin K. Williams & Co.-East*, 542 F.2d 1053, 1059 (9th Cir. 1976) ("We agree with the district court that the words 'grant, bargain, and sell' used in the 1952 Agreement, which are ordinarily associated with a sale, were used here to convey to [the defendant] only the limited right to do business in the Eastern territory under [the plaintiff's] tradenames.").

Here, the Brand Sale Agreement withheld numerous rights associated with trademark ownership from Blue Mountain while it owed any amount of the purchase price. Under the Agreement's express terms, Blue Mountain could not receive legal title to the mark with the USPTO or any other government registry; Blue Mountain could not register the mark in new jurisdictions in its own name—only Lighthouse's; Blue Mountain could not license or assign the mark except as specified in the Agreement or with Lighthouse's prior written consent; Blue Mountain could manufacture, distribute, and sell its products only through approved entities; Lighthouse continued to have a sufficient "ownership interest" to protect the mark; and Lighthouse could order Blue Mountain to modify or cease its use of the mark if Lighthouse suspected harm to the mark's goodwill or noncompliance with

---

397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court." (quotation marks, citation, and alteration omitted)). The Plaintiffs offer no justification for the Court to deviate from these rules here, and it will not.

the Agreement. *See Blue Mountain Holdings*, 2022 WL 2316386, at *4-5. Based on the many duties imposed on Blue Mountain and the many rights retained by Lighthouse, the Court reasonably concluded that the Brand Sale Agreement was a mere license to use the VIVAZEN mark. *See id.* at *5; *see also ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 598 (5th Cir. 2003) ("[A]n agreement that sets forth many duties and rights between the parties that are inconsistent with an assignment . . . does not constitute an assignment." (quotation marks and citation omitted)).

The Plaintiffs also warn that the Court's decision will do "irreparable violence to long-settled rules governing commercial and personal contract construction" in the United States. (Pls.' Br. in Supp. of Pls.' Mot. for Reconsideration, at 14.) In particular, they state that trademark assignments and other sales agreements are often structured as installment contracts with legal title passing upon the final payment. (*Id.*) By "crude analogy"—and indeed, it is crude—the Plaintiffs explain that a mortgage on a personal residence is viewed as a sale, not a license, even though the lender retains a lien on the home pending repayment. (*Id.* at 14 n.5.) But the Court did not base its holding on the fact that the Brand Sale Agreement was structured as an installment contract. Rather, the Court emphasized that the Agreement severely restricted Blue Mountain's rights in the VIVAZEN mark until it paid off the full purchase price. *See Blue Mountain Holdings*, 2022 WL 2316386, at *4-5. Unlike the Brand Sale Agreement, a residential mortgage does not

6

prevent a homeowner-borrower from recording the encumbered property in her name (in fact, that is required) and places minimal restrictions on her ability to use, improve, and sell the property. So, the Plaintiffs' mortgage analogy, while offered to support reconsideration, instead cuts against it.

### B. Whether the Brand Sale Agreement Was a Naked License

The Plaintiffs next move for reconsideration on the holding that the Brand Sale Agreement was a naked license, thus forfeiting Lighthouse's ownership of the VIVAZEN mark. (Pls.' Br. in Supp. of Pls.' Mot. for Reconsideration, at 14-21.) According to the Plaintiffs, it was error for the Court to find, "in the face of contrary factually disputed evidence and current law," that Lighthouse exercised no quality control over Blue Mountain's operations. (*Id.* at 15-16.) The Plaintiffs, it seems, are attempting to rewrite history. In reaching this conclusion, the Court relied on the Plaintiffs' sworn deposition testimonies and admissions of material facts, asserting unequivocally that Lighthouse has never supervised Blue Mountain's production, marketing, or sale of VIVAZEN products. *See Blue Mountain Holdings*, 2022 WL 2316386, at *2, 6. (Pls.' Resp. to Bliss Nutra's Statement of Undisputed Material Facts ¶¶ 25-28; Blue Mountain Dep. at 54:24-55:4; Lighthouse Dep. at 15:10-25.) During the summary judgment briefing, the Plaintiffs presented no evidence to rebut these statements. Rather, they assured that the lack of quality control was a "testament to the exceptional job that [Blue Mountain] has done and continues to do in manufacturing dietary

supplements of the highest quality."[2] (Pls.' Br. in Opp'n to Bliss Nutra's Mot. for Summ. J., at 20.)

Now, the Plaintiffs backtrack on their numerous admissions and hope to drum up a fact issue by citing new deposition excerpts regarding quality control. (Pls.' Br. in Supp. of Pls.' Mot. for Reconsideration, at 7-10, 16-18.) But parties are not permitted to introduce new evidence on a motion for reconsideration, unless the evidence was previously unavailable (which is not the case here). Nor is the Plaintiffs' tardiness excused simply because, as they argue, "[a]ll record evidence must be considered when determining if summary judgment is appropriate." (Reply Br. in Supp. of Pls.' Mot. for Reconsideration, at 3 n.2.) The Court is not obligated to "parse a summary judgment record to search out facts or evidence not brought to its attention." *McNorton v. Ga. Dep't of Transp.*, 619 F. Supp. 2d 1360, 1365 (N.D. Ga. 2007) (citing *Atlanta Gas Light Co. v. UGI Utils., Inc.*, 463 F.3d 1201, 1209 n.11 (11th Cir. 2006)). "It is the obligation of the non-moving party, not the Court, to scour the record in search of the evidence that would defeat a motion for summary judgment." *Trapp v. Great Expressions Dental Ctrs. of Ga., P.C.*, 2014 WL 12784474, at *13 (N.D. Ga. July 16, 2014) (citation and alteration omitted). Having failed to

---

[2] Of course, the Plaintiffs provided no evidence to substantiate this claim—nothing to suggest that Lighthouse had ever inspected the quality of Blue Mountain's products and, even more basically, nothing to suggest what qualifies as a high-quality VIVAZEN product.

do so the first time around, the Plaintiffs do not get a second bite at the evidentiary apple on reconsideration. *See Durden*, 2017 WL 3723118, at *6 ("Evidence that could have been discovered and presented on the previously-filed motion is not newly discovered." (citation omitted)).

The Plaintiffs also argue that the Court applied the wrong legal standard to the naked licensing issue. Whereas the Court emphasized the lack of actual control that Lighthouse exerted over Blue Mountain, the Plaintiffs claim that the focus should have been on the consistent quality of Blue Mountain's products. (Pls.' Br. in Supp. of Pls.' Mot. for Reconsideration, at 18, 20.) According to the Plaintiffs, the Eleventh Circuit has "firmly established" a two-part test to prove trademark abandonment by naked licensing: that is, the licensor must have (1) failed to supervise its licensee and (2) allowed its licensee to depart from the licensor's quality standards. (Reply Br. in Supp. of Pls.' Mot. for Reconsideration, at 5 (citing *Groucho's Franchise Sys., LLC v. Grouchy's Deli, Inc.*, 683 F. App'x 826, 830 (11th Cir. 2017)).) Again, this argument was not made on summary judgment and is not properly before the Court on reconsideration. Instead, the Plaintiffs argued before that "the right to control rather than the actual exercise of control . . . determines whether or not a license is valid." (Pls.' Br. in Opp'n to Bliss Nutra's Mot. for Summ. J., at 20 (citation and alteration omitted).) The Court rejected this argument, observing that "most courts require actual control, not a mere right to control,

9

to defeat a trademark abandonment claim."[3] *Blue Mountain Holdings*, 2022 WL 2316386, at *5 (collecting authorities).

In any event, the Plaintiffs overstate the meaning of *Groucho's Franchise* and its helpfulness to their case. There, the issue of naked licensing arose in an unrelated dispute over whether the doctrine of laches barred the

---

[3] The Court acknowledges that two circuit courts of appeals may impose a lower bar than the "actual control" standard. When faced with a naked licensing claim, the Eighth and Ninth Circuits consider whether the licensor "(1) *retained contractual rights to control the quality of the use of its trademark*; (2) actually controlled the quality of the trademark's use; *or* (3) reasonably relied on [the licensee] to maintain the quality." *Lawn Managers, Inc. v. Progressive Lawn Managers, Inc.*, 959 F.3d 903, 909 (8th Cir. 2020) (emphasis added); *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 512 n.1 (9th Cir. 2010) (emphasis added). However, these three factors could also be viewed as endorsing the flexible approach to quality control, as recognized in the Restatement (Third) of Unfair Competition. *See* Restatement (Third) of Unfair Competition § 33 cmt. c (May 2022 update). As the Seventh Circuit reasoned, how much authority a licensor must exercise over quality control "can't be answered generally; the nature of the business, and customers' expectations, both matter." *Eva's Bridal Ltd. v. Halanick Enters., Inc.*, 639 F.3d 788, 791 (7th Cir. 2011); *see also Edwin K Williams*, 542 F.2d at 1060 ("The amount of control required varies with the circumstances."). So, for example, more rigorous oversight may be needed where "an ordinary, unsuspecting customer [could] make an isolated purchase of contaminated food or a dangerously defective product." *Edwin K. Williams*, 542 F.2d at 1060. Applied here, this principle favors more, not less, quality control since VIVAZEN products (e.g., kratom-based powders, capsules, and beverages) are marketed for human consumption. In the Court's view, the fact that the Brand Sale Agreement gave Lighthouse the right to supervise Blue Mountain's use of the VIVAZEN mark—unaccompanied by actual efforts to define, inspect, or enforce quality standards—is not enough under the circumstances to avoid trademark abandonment. *See Blue Mountain Holdings*, 2022 WL 2316386, at *1-2, 5-6. Nor did the Plaintiffs argue that Lighthouse could rely on Blue Mountain's own quality control measures based on some prior working relationship (an oversight which they also try to rectify with new evidence on reconsideration). *See id.* at *6.

10

plaintiff's trademark infringement claims. *See Groucho's Franchise*, 683 F. App'x at 829-30. Far from "establishing" a naked licensing test, the Eleventh Circuit explained that the plaintiff could not save its untimely infringement claims by arguing that the defendant had entered into a naked license (and thus abandoned its own mark). *See id.* at 830. In that narrow context, the court stated: "The abandonment of a mark by 'naked licensing' occurs when the owner of a mark fails to supervise its licensee and allows the licensee to depart from the licensor's quality standards." *Id.* But the sole case cited for that proposition—*Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368 (5th Cir. 1977)—did not incorporate quality deviations as an element of naked licensing. To the contrary, the Fifth Circuit made clear that "[w]e must determine whether [the licensor] has abandoned quality control; the *consuming public* must be the judge of whether the quality control efforts have been ineffectual." *Kentucky Fried Chicken*, 549 F.2d at 387 (emphasis added). Therefore, the Court reads *Groucho's Franchise* as simply expressing the policy behind the quality control requirement: that is, to avoid misleading the public with substandard products bearing a particular mark. *See Blue Mountain Holdings*, 2022 WL 2316386, at *4 (citing McCarthy on Trademarks and Unfair Competition § 18:48 (5th ed. June 2022 update)).

Even if the Court were to adopt the Plaintiffs' interpretation, it still would not support reconsideration. The Court has seen no evidence, either now or on summary judgment, that Lighthouse has any specific quality standards

11

for VIVAZEN products. As noted in the Order, Lighthouse is a holding company with no officers, employees, or customers and no history of selling VIVAZEN products itself. *See id.* at \*1, 6. The Brand Sale Agreement contains no formulas or ingredient lists, no manufacturing or packaging instructions, no sales procedures, and no other provisions holding Blue Mountain to a discernable product quality. *See id.* at \*6. So, it would be absurd to uphold the Brand Sale Agreement as a valid license on the grounds that Blue Mountain has not deviated from Lighthouse's *nonexistent* quality standards. Rather, the absence of quality standards in the record further supports the Court's finding of a naked license. *See* Restatement (Third) of Unfair Competition § 33 ("Trademark licenses . . . frequently contain express terms specifying standards of quality, ingredients, manufacturing methods, or other conditions or obligations intended to insure a level of quality satisfactory to the licensor. If the trademark owner is justified in relying on the reputation and expertise of the licensee, the existence of contractual obligations undertaken by the licensee may be sufficient in itself to constitute reasonable quality control under the rule stated in this Section, at least in the absence of evidence indicating significant deviations from the agreed standards or procedures.").

### C. Additional Holdings

Finally, the Plaintiffs ask the Court to reconsider three holdings that either laid the groundwork for or followed from its naked licensing discussion. Those holdings were: (1) Bliss Nutra was not in privity with Natural Vitamins,

as required to trigger res judicata on Bliss Nutra's trademark abandonment defense; (2) the Plaintiffs cannot pursue trademark infringement claims for events which occurred before the Brand Sale Agreement was executed; and (3) the Plaintiffs' common law claim for trademark infringement and unfair competition fails along with their statutory claims. (Pls.' Br. in Supp. of Pls.' Mot. for Reconsideration, at 23-25.) The Court addresses each holding in turn.

First, the Plaintiffs contend that the Court disregarded genuine issues of material fact in rejecting their res judicata argument. (Pls.' Br. in Supp. of Reconsideration, at 23-24.) To review, the Plaintiffs claimed on summary judgment that Bliss Nutra was estopped from asserting an abandonment defense by Natural Vitamins' failed trademark cancellation action against Lighthouse. *See Blue Mountain Holdings*, 2022 WL 2316386, at *3. Bliss Nutra and Natural Vitamins, the Plaintiffs argued, were in privity based on evidence that Natural Vitamins had manufactured Vivazen Botanicals products for Bliss Nutra until 2020 and both companies had tried to register similar trademarks using the VIVAZEN name about 17 months apart. *See id.* The Court disagreed, holding that the evidence could not prove that Bliss Nutra "is the successor-in-interest or co-owner of any trademark rights belonging to Natural Vitamins." *Id.* Rather, it showed "a mere business arrangement between a supplier and its customer," which "does not rise to the level of substantive legal relationship contemplated in *Taylor*[*v. Sturgell*, 553 U.S. 880 (2008)]." *Id.* On this record, there was no "factual dispute" that needed to be

submitted to a jury, and the Plaintiffs have failed to identify a clear error in the evidence or case law relied upon by the Court. (Pls.' Br. in Supp. of Pls.' Mot. for Reconsideration, at 23-24; Reply Br. in Supp. of Pls.' Mot. for Reconsideration, at 4-5 n.4.)

Next, the Plaintiffs argue that their trademark infringement claims should survive at least for the period pre-dating the naked license. (Pls.' Br. in Supp. of Reconsideration, at 24.) According to the Plaintiffs, the evidence suggests that Bliss Nutra began infringing on the VIVAZEN mark in early 2018, whereas Lighthouse did not abandon the mark until January 3, 2019, at the earliest (i.e., the date when the Brand Sale Agreement was executed). (*Id.*) Not only are there no authorities accompanying this argument, but it also was not raised in the Plaintiffs' summary judgment briefs. In the Eleventh Circuit, "[t]o bring a trademark infringement claim under the *Lanham Act*, a plaintiff must hold a valid trademark." *Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1329 (11th Cir. 2008). But "[r]ights in a mark can be lost through abandonment, non-use, or a naked license without control over product quality." *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1022 n.6 (11th Cir. 1989). Because Lighthouse forfeited all rights in the VIVAZEN mark by granting a naked license, the Court was justified in holding that the Plaintiffs cannot pursue an action even for past infringement of the mark. *See Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 596 (9th Cir. 2002) ("[W]here the licensor fails to exercise adequate quality control over

14

the licensee, a court may find that the trademark owner has abandoned the trademark, *in which case the owner would be estopped from asserting rights to the trademark.*" (emphasis added) (quotation marks and citation omitted)).

Finally, notwithstanding the cancelled trademark, the Plaintiffs contend that the Court must resolve the "common law rights" that Blue Mountain acquired in the VIVAZEN brand. (Pls.' Br. in Supp. of Pls.' Mot. for Reconsideration, at 24-25.) What those common law rights might be, the Plaintiffs do not say. The Court, of course, did award summary judgment to Bliss Nutra on the Plaintiffs' sole common law claim—for trademark infringement and unfair competition (Count Four). *See Blue Mountain Holdings*, 2022 WL 2316386, at *6. Citing Eleventh Circuit precedent, the Order explained that "courts may use an analysis of federal infringement claims as a measuring stick in evaluating the merits of state law claims of unfair competition." *Id.* (alteration omitted) (quoting *Natural Answers, Inc.*, 529 F.3d at 1333). For example, in *Natural Answers*, the court held that a trademark holder could not maintain common law claims for infringement and unfair competition after abandoning its mark under the Lanham Act. *See Natural Answers*, 529 F.3d at 1332-33. Again, the Plaintiffs cite no case law to the contrary and thus give the Court no reason to reconsider this holding.

## IV.   Conclusion

For the foregoing reasons, the Plaintiffs' Motion for Reconsideration [Doc. 350] is DENIED.

15

SO ORDERED, this ___12th___ day of September, 2022.

*[signature: Thomas W. Thrash]*

THOMAS W. THRASH, JR.
United States District Judge